[No. 8552. Department Two. February 25, 1910.]

GEORGE M. HORTON, *Guardian etc., Respondent*, v.
R. W. BARTO *et al., Appellants,* and LORENZO
FICKERT *et al., Defendants.*[1]

EXECUTORS AND ADMINISTRATORS—DISTRIBUTION—JURISDICTION—
PROCESS—INFANTS—SERVICE ON GUARDIAN. A decree of distribution
of an estate cannot affect the interests of a minor unless jurisdiction
over him be acquired by service of notice upon his general guardian,
if he have one, and if not, then by the appointment of a guardian
*ad litem.*

SAME—JURISDICTION OVER HEIRS. Upon the distribution of an
estate it is necessary to acquire jurisdiction over heirs or devisees
of the deceased, or their descendants who died subsequently to the
death of the deceased.

SAME—DISTRIBUTION—BONA FIDE PURCHASERS—INTERESTS NOT OF
RECORD. A distributee upon final settlement of an estate, and his
successors in interest, are not *bona fide* purchasers by reason of the
fact that they had no notice of the interests of an heir which was
not in the record chain of title; but they are bound to notice the
interests of all who successively acquire title by inheritance or will.

SAME—RECORDS—FAILURE TO RECORD WILL. Failure to record a
will, under Rem. & Bal. Code, § 1306, requiring a copy of a will to
be recorded in the county auditor's office of each county in which
lands devised are located, does not relieve a purchaser of taking
notice of the interests of devisees where the will was probated in
the county in which the land is located.

WILLS—EXECUTION—PROBATE—COLLATERAL ATTACK. Probate of a
will in common form cannot be collaterally attacked or set aside after
the time limited therefor by law because of the fact that the will
appears on its face not to have been executed in the manner required
by law.

SAME—STATUTES. Under Rem. & Bal. Code, § 1307, providing for
the contest of the probate of a will, within one year, on the question
of the competency of the deceased, or respecting its execution, re-
straint, undue influence, "or any other cause affecting the validity"
of the will, and § 1309, providing that the probate shall be binding if
no person shall appear within the year, all contests based upon any
cause affecting the validity of the will must be commenced within
the time limited, after which the probate is binding upon all except
persons under disability.

[1]Reported in 107 Pac. 191.

PARTITION — BY PAROL — EVIDENCE—SUFFICIENCY. Evidence that two heirs contemplated dividing property left by their mother is insufficient to show a parol partition between them.

APPEAL—REVIEW—SCOPE OF REVIEW. Upon an appeal from a decree merely determining the title to land in controversy, the supreme court will not consider questions that may arise upon a partition of the land.

Appeal from a judgment of the superior court for King county, Albertson, J., entered February 26, 1909, in favor of the plaintiff, after a trial before the court without a jury, in an action for partition and to quiet title. Affirmed.

*Blaine, Tucker & Hyland,* for appellants.

*S. D. King* and *Todd, Wilson & Thorgrimson,* for respondent.

PARKER, J.—By this suit the plaintiff seeks to have his ward, Edward Collins, adjudged the owner of an undivided one-fourth interest in certain lands in King county, and also, to have the same partitioned. Upon the trial it was agreed between counsel for all parties that the cause should be first tried upon the question of the title of the respective parties to the lands involved, and that partition proceedings should await a final determination of the cause upon the question of title. The trial of the cause before the court upon the question of title·resulted in a decree favorable to plaintiff. The defendants Barto and wife have appealed.

In 1876 Dinah Sour died intestate, in King county. She was then the owner of the lands here in controversy, the same being her separate property. This is the common source of title of all the parties to this suit. She left surviving her, as her only heirs at law, her two children, Stephen Collins and Lucinda Gordon, each of whom took by inheritance an undivided one-half of the property left by their mother. In 1882 Stephen Collins died intestate, leaving as his only heirs at law his widow Annie (or Anna), and their son William H. Collins, each of whom took by inheritance an undivided one-

half of the property left by Stephen Collins. This resulted in Annie Collins becoming the owner of an undivided one-fourth of all the property left by Dinah Sour, the mother of her husband, unless her husband had theretofore been divested of title to certain portions thereof, including the lands here involved, by an alleged parol partition which we will notice later.

On June 15, 1886, Annie Collins gave birth to another son, who was then named Edward Sweeney Collins. He also appears to have been known as Ned S. Clalendon (or Clendon), but has generally been known as Ned S. Collins. There is, however, no question as to his identity. He is the ward in whose behalf this suit was instituted. In May, 1894, Annie Collins died, leaving as her only heirs at law her two sons, William H. Collins and Edward Collins. She had not disposed of any of her interest in the property left her by her husband. She left a will by which she devised unto her son William H. Collins the sum of five dollars, and devised unto her son Ned S. Collins (Edward Collins), the residue of her estate; and provided for the settlement of her estate by her executor without intervention of the superior court, except to admit her will to probate. It is not suggested here that the five-dollar bequest to William H. Collins is now a charge upon the land involved. The will was duly admitted to probate in the superior court for King county on June 8, 1894. No further court proceedings were had in the administration of the estate of Annie Collins.

In 1891 letters of administration were granted by the superior court for King county upon the estate of Dinah Sour, who had died in 1876. On June 14, 1899, the superior court for King county rendered a final decree of distribution in the matter of the estate of Dinah Sour. This, it will be noticed, was long after the death of Stephen Collins, her son, and long after the death of Annie Collins, his wife, and also long before Edward Collins, the second son of Annie Collins, became of age, he being then only thirteen years old. This

decree purported to distribute the whole of the estate of Dinah Sour to William H. Collins, son of Stephen and Annie Collins, both deceased, and James Fares, adopted son of Lucinda Gordon, deceased. It was rendered, evidently, upon the theory that the court had jurisdiction to determine who were entitled to the property as heirs of the deceased heirs of Dinah Sour, the heirs of Dinah Sour (William H. Collins and Lucinda Gordon) having died after the death of Dinah Sour and before distribution. While this decree recites that due notice was given of the hearing as required by law, it is conceded that, at the time of the distribution, Edward Collins had no general guardian, and that no guardian was appointed to appear for him to take care of his interest upon that hearing. Barto and wife claim title as successors in interest of James Fares and William H. Collins.

It is contended by learned counsel for appellants that the decree of distribution in the estate of Dinah Sour is a final determination of who were entitled to the property left by her, and that Edward Collins is bound by that decree. Passing the question of the power of the court in that proceeding to determine any person's rights, other than the rights of the heirs of Dinah Sour (Stephen Collins and Lucinda Gordon), in view of the fact it was her estate that was being administered and distributed and not the estate of her deceased heirs, let us inquire as to whether or not the court had jurisdiction over the minor, Edward Collins. The matter of acquiring jurisdiction upon distribution of an estate of deceased persons is provided for by § 1589 of Remington & Ballinger's Code as follows:

"The decree may be made on the application of the executor or administrator, or of any person interested in the estate, and shall only be made after notice has been given in the manner required in regard to an application for the sale of land by an executor or administrator. The court may order such further notice to be given as it may deem proper."

Turning to the sections relating to the manner of acquiring jurisdiction, upon an application to sell real estate, we find

the following: Section 1499 provides that, upon the filing
of the application, the court shall, "make an order directing
all persons interested to appear at a time and place speci-
fied, . . . to show cause why an order shall not be
granted, . . . to sell . . ." etc.

Section 1500 provides:

"A copy of such order to show cause shall be personally
served on all persons interested in the estate at least ten days
before the time appointed for the hearing of the petition, or
shall be published at least four successive weeks in such news-
paper as the court shall order . . ."

Section 1502 provides:

"If any of the devisees or heirs of the deceased are minors,
and have a general guardian in the county, the copy of the
order shall be served on the guardian. If they have no such
guardian, the court shall, before proceeding to act on the
petition, appoint some disinterested person their guardian
for the sole purpose of appearing for them, and taking care
of their interests in the proceedings."

In the case of *Ball v. Clothier*, 34 Wash. 299, 310, 75
Pac. 1099, this court held that the superior court was with-
out jurisdiction to order a sale so as to divest a minor of his
interest in the land, unless jurisdiction over the minor was
acquired as provided by § 1502. These statutory provisions,
and the construction placed upon them, render it plain that
the interest of a minor cannot be affected by a decree of dis-
tribution unless jurisdiction over the minor has been acquired
by service upon his general guardian, or if he has no such
guardian, then by the appointment of a guardian to take
care of his interests in the proceeding. We have seen that
Edward Collins had no general guardian, nor was any
guardian appointed to represent him at the time of render-
ing of the decree of distribution of the estate of Dinah Sour.
In view of the fact that Edward Collins did not inherit from
Dinah Sour, was it necessary that the court acquire juris-
diction over him in the manner provided by these sections

31—57 WASH.

of the statute? We think it was. Assuming that the court had jurisdiction over the estate of Dinah Sour, and that the decree was rendered upon due publication of an order to show cause, it no doubt would have become final as to Stephen Collins, the son and heir of Dinah Sour, he being of full age, had he then been alive. *In re Ostlund's Estate, ante* p. 359, 106 Pac. 1116. However, upon distribution it is as necessary to acquire jurisdiction over an heir or devisee of a deceased heir or devisee of the person whose estate is being distributed, as it is over such deceased heir or devisee if he were alive. Of course we have reference only to deceased heirs or devisees who die after the death of the person whose estate is being distributed. 18 Cyc. 646; 2 Woerner, American Law of Administration (2d ed.), § 561; *Distributees of Hall v. Andrews, Adm'r*, 17 Ala. 40; *Morris v. Virden*, 57 Ark. 232, 21 S. W. 223.

Upon the same principle we think it was necessary to acquire jurisdiction over the minor Edward Collins, who took title as an heir and devisee of his mother Annie Collins, deceased, who took title as the widow of Stephen Collins, deceased, who took title as an heir of his mother Dinah Sour, deceased, whose estate was attempted to be distributed. We are of the opinion that the decree was not a conclusive adjudication upon the rights of Edward Collins. We do not want to be understood as expressing any opinion upon the power of the superior court, in decreeing distribution of an estate of a deceased person, to determine the respective rights of heirs or devisees, among themselves, of deceased heirs or devisees of a deceased person whose estate is being distributed. The fact that the court in no event had jurisdiction over Edward Collins is sufficient ground for our holding that this decree of distribution is not conclusive upon his rights. He was entitled to be heard upon the question of the interest inherited by Stephen Collins, his mother's deceased husband, from Dinah Sour. And if the court had jurisdiction, as it assumed to have, in the distribution of Dinah Sour's estate,

over the devolution of this property beyond the determination of who her heirs were and the determination of what their respective interests were at the time of her death, then Edward Collins had a right to be heard upon the question of his mother's rights as the widow and successor in interest of her deceased husband, Stephen Collins, and also upon the question of his own right as an heir and devisee of his deceased mother.

Appellants claim to be purchasers of the land for full value and without notice of the rights of Edward Collins. Their counsel contend that the interest of Edward Collins is not within the record chain of title, and therefore appellants were not required to take notice of his interest. It is argued, in substance, that since the name of Edward Collins does not appear in some instrument on record in the auditor's office, indicating his interest in the land, purchasers are therefore not required to take notice of such interest. The case of *Attebery v. O'Neil,* 42 Wash. 487, 85 Pac. 270, is cited by counsel in support of this contention. In that case, prior to the death of the wife, the husband had acquired an equitable interest in land which presumably belonged to the community. The legal title to the land was conveyed to the husband after the death of the wife. This was the first record evidence of the husband's title, there being nothing of record showing the equitable interest acquired before the wife's death. It was held in that case that a subsequent mortgagee, who had become such in good faith by a mortgage executed to him upon the land by the husband and his second wife, was not bound to take notice of the possible interest of the heirs of the first wife. This was but the application of the general rule recognized by this court in the case of *Sengfelder v. Hill,* 21 Wash. 371, 384, 58 Pac. 250, to the effect that an equitable title of which a purchaser had no notice will not be allowed to prevail over a legal title purchased by him in good faith. The title of Edward Collins in this land is not merely equitable but purely legal. And while his name does not appear

in the recorded chain of title in the auditor's office, that of
Dinah Sour, the source from which he acquired his title by
inheritance and will, does appear in the record chain of title.
We think it is elementary that the interests of all who suc-
cessively acquire title by inheritance or will from a deceased
record owner must be noticed by purchasers of the land. The
legal title to their respective interests in this land was ac-
quired by Stephen Collins, Annie Collins, and Edward Collins
in succession, each immediately upon the death of his or her
respective predecessor in interest. Rem. & Bal. Code, § 1366;
*Griffin v. Warburton,* 23 Wash. 231, 62 Pac. 765; *Anrud v.
Scandinavian-American Bank,* 27 Wash. 16, 67 Pac. 364.

Our attention is called to several sections of the recording
statutes. We need notice only § 1306 of Remington & Bal-
linger's Code, which provides:

"In all cases where lands devised by last will are situated
in different counties, a copy of such will shall be recorded in
the county auditor's office in each county within six months
after probate."

There does not appear to be any provision of our laws de-
claring the effect of a failure to so record the will, upon the
interest of a devisee named therein. Whatever the purpose
of this recording provision may be, we are of the opinion
that the failure to so record the will does not relieve a pur-
chaser from taking notice of the interest of a minor devisee
named therein, when the will has been duly probated in the
superior court of the county in which the land is situated,
assuming, of course, that the testator's title is of such nature
that a purchaser would be required to notice it.

It is contended that the will of Annie Collins is void be-
cause of a failure to comply in its execution with § 1321 of
Remington & Ballinger's Code, which provides:

"Every person who shall sign the testator's or testatrix's
name to any will by his or her direction shall subscribe his
own name as a witness to such will, and state that he sub-
scribed the testator's name at his request."

It is argued that the will upon its face bears evidence of having the name of the testator subscribed thereto by some person other than herself, and hence there should have been indorsed thereon a statement by the person so subscribing the testator's name, as provided by this section. We regard this contention as presenting only a question which was before the court upon the probating of the will, and which might have been again presented to the court within the year allowed for contesting the will. Rem. & Bal. Code, § 1307. The probating of a will is a judicial act, and as such it cannot be avoided or set aside save in the manner provided by law. 1 Woerner, American Law of Administration (2d ed.), § 227; 23 Am. & Eng. Ency. Law (2d ed.), 132; Note in 21 L. R. A. 682 (*Sly v. Hunt*, 159 Mass. 151, 34 N. E. 187, 38 Am. St. 403); 1 Ross, Probate Law & Practice, § 192; *State v. McGlynn*, 20 Cal. 233, 81 Am. Dec. 118. And this is true even though the probate be in common form as it is under our law. *London v. Wilmington etc. R. Co.*, 88 N. C. 584; *Petty v. Ducker*, 51 Ark. 281, 11 S. W. 2. Apparently the only difference between the finality of probate in solemn form and probate in common form is as to the time when the probate becomes conclusive. Probate in solemn form becomes conclusive upon rendering the decree to that effect, because it is upon notice to all who are interested. Probate in common form becomes equally conclusive upon the expiration of the time fixed by the statute for contesting the will after its probate, except as to certain persons under disability. The sections of Remington & Ballinger's Code providing for such contest and limiting the time within which it may be commenced, are the following:

"Section 1307. If any person interested in any will shall appear within one year after the probate or rejection thereof, and, by petition to the superior court having jurisdiction, contests the validity of said will, or pray to have the will proven which has been rejected, he shall file a petition containing his objections and exceptions to said will, or to the rejection thereof. Issue shall be made up, tried and deter-

mined in said court respecting the competency of the deceased to make last will and testament, or respecting the execution by the deceased of such last will and testament under restraint or undue influence or fraudulent representation, or for any other cause affecting the validity of such will."

"Section 1309. If no person shall appear within the time aforesaid, the probate or rejection of such will shall be binding, save to infants, married women, persons absent from the United States, or of unsound mind, a period of one year after their respective disabilities are removed."

It is contended that the concluding words of § 1307, "or for any other cause affecting the validity of such will," under the rule of *ejusdem generis,* are limited to causes of contest similar in kind to those specifically enumerated in the section, and do not include such defect as is here relied upon to avoid this will; and it is argued that such cause for avoiding the will is not within the one-year limitation. We are of the opinion, however, that in view of the language of § 1309, and the fact that we have no provision for the contest of will other than § 1307, the law is that all contests based upon any cause affecting the validity of the will must be commenced within one year after probate, and if not so commenced the probate becomes a final adjudication as to the validity of the will, binding upon the whole world, save as to the persons under disability mentioned in § 1309. This will having been duly probated and remaining uncontested for over fifteen years, its validity is now beyond question, save as the right of contest may exist in persons under disability.

It is contended that there was a voluntary parol partition of the property left by Dinah Sour, between her children, Stephen Collins and Lucinda Gordon, prior to the death of Stephen Collins in 1882, by which he parted with his interest in the land here involved. There is some evidence in the record tending to show that they contemplated dividing the land left by their mother, but it is wholly insufficient to support the conclusion that such partition was ever consum-

mated. Besides, it is evident the successors in interest of Stephen Collins and Lucinda Gordon have never relied upon any such partition, which is alleged to have been made nearly thirty years ago.

Appellants make some contention against the right of plaintiff to partition because of the latter's alleged failure to bring into the cause all of the common property. The questions which may arise upon the partition are not before us. So far as this appeal is concerned it is only from a decree determining the question of the title of the respective parties. Other contentions of appellants are without merit, and are not such as require discussion.

We find no error in the record. The judgment of the superior court is affirmed.

RUDKIN, C. J., DUNBAR, CROW, and MOUNT, JJ., concur.