[No. 11412.   Department One.   February 28, 1914.]

*In the Matter of the Estate of* NICHOLAS HOSCHEID.

SUSANNE HOSCHEID, *Respondent*, v. MATTHIAS BARTHOLET *et al., Appellants.*[1]

EXECUTORS AND ADMINISTRATORS—DISTRIBUTION—NOTICE BY PUBLICATION—SUFFICIENCY. Under Rem. & Bal. Code, § 1589, requiring notice of final distribution of an estate to be published at least four successive weeks, a notice is insufficient to confer jurisdiction to make an order of final distribution where less than four weeks. elapsed between the first publication and the date of the hearing.

WILLS—PROBATE—CONTEST — LIMITATIONS—FRAUD — REVOCATION. Rem. & Bal. Code, § 1309, providing that the probate of a will shall be conclusive if no person shall appear to contest the same within one year after probate is a statute of limitations, and bars any subsequent contest or proceeding at law or in equity to set aside the probate on the ground of fraud or that the will had been revoked by marriage.

SAME—PROBATE—CONTEST—GROUNDS—FRAUD. Rem. & Bal. Code, § 1307, authorizing a contest of the probate of a will at any time within one year, on the ground of want of testamentary capacity, restraint, undue influence and fraudulent representations "or for any other cause affecting the validity of the will," includes fraud in effecting the probate, and is not limited to causes affecting the validity of the will at the time it was executed.

WILLS—CONTEST—LACHES. A widow is guilty of laches, precluding any right to contest the probate of the will of her husband, where she learned of her husband's death shortly thereafter, and employed an attorney who wrote a letter to a banker and was informed that.

[1]Reported in 139 Pac. 61.

deceased left no property, and she relied on the information without prosecuting any other inquiry and took no steps to assert her claims for thirteen years after the expiration of the year allowed for filing a contest.

Appeal from a judgment of the superior court for Kittitas county, Kauffman, J., entered December 28, 1912, upon findings in favor of the petitioner, setting aside the final distribution of an estate. Reversed.

*John B. Davidson,* for appellants.

*John H. McDaniels,* for respondent.

ELLIS, J.—This is an appeal from an order setting aside a decree of distribution of the estate of Nicholas Hoscheid, deceased, and declaring that he died intestate, and distributing his estate accordingly. The record discloses material facts as follows: On May 7, 1889, Nicholas Hoscheid, then a widower without children or other descendants, made a will, bequeathing and devising all of his property to his mother, his brothers, and other collateral kindred, and to certain relatives of his deceased wife. Thereafter, he went to Minnesota, and, on July 21, 1891, married Susanne Hoscheid, the petitioner in this proceeding. In 1895, he left the petitioner, shortly afterward returning to Kittitas county, Washington, where he died on February 4, 1897.

The petition for probate of the will recited that the deceased had a wife at the time of his death residing in Northfield, Minnesota, but that she and the deceased had not lived together for two years previously, and that the petitioner was unable to say whether or not they were divorced at the time of the death. The executor named in the will, one Matthias Bartholet, filed the will on February 6, 1897, and it was admitted to probate on March 26, 1897. Matthias Bartholet was appointed executor and qualified as such. An inventory was filed, and on May 18, 1897, an appraisement made of the personalty, and on August 7, 1897, an appraisement was made of the realty belonging to the estate.

The personalty was appraised at $2,369, and the real estate at $368.01.

On April 12, 1911, the executor filed his final account, showing money on hand, $2,338.07, and real estate valued at $4,500. The final account was approved May 1, 1911. On May 15, 1911, an order to show cause why distribution should not be made was entered and set for hearing on June 12, 1911. This order to show cause was published in the paper designated by the court on May 18, May 25, June 1 and June 8, 1911. A decree of distribution was entered June 12, 1911, ordering the estate distributed in accordance with the terms of the will.

On September 28, 1911, the petitioner, who then resided in St. Paul, Minnesota, filed her petition in the superior court of Kittitas county, praying for a vacation of the order of distribution, and for a decree declaring that the deceased died intestate, and ordering the distribution of his estate accordingly. The executor demurred to this petition on the ground that the relief sought was barred by the statute of limitations. The demurrer was sustained.

On January 25, 1912, the petitioner filed an amended petition, alleging her marriage with the deceased in 1891, the continuance of that relation until his death; that the will was made prior to the marriage, and was never republished thereafter; that the decedent left her in 1895, and came to Washington, remaining there until his death; that, some time after his death, she was informed thereof, caused inquiry to be made, and was informed by one Bartholet that the deceased left no property, which statement she relied upon until September, 1911, when she first learned that the deceased left an estate; that the proponents of the will knew of the marriage subsequent to the making of the will, knew that petitioner had been misinformed as to the facts, and probated the will in fraud of her rights. The petition outlined the proceedings in the probate court, and alleged that the order of distribution was void because based upon insufficient notice,.

and that no actual distribution had been made. The petition prayed that the probate proceedings be set aside, that the deceased be declared to have died intestate, that letters of administration be issued to close the estate, and that petitioner be adjudged the owner of an undivided one-half of the estate.

A demurrer to the petition was interposed on the ground that it did not state sufficient facts, and that it was not filed within the time limited by law after probate of the will. The demurrer was overruled. The petitioner's deposition was read in evidence. The defendants offered no evidence. The court made findings corresponding, in substance, with the amended petition, and concluded, as a matter of law, that the will should be deemed revoked and ineffectual as a muniment of title; that the order of probate was without prejudice to the assertion of the rights of the petitioner as widow and heir at law of the deceased; that the order of probate was erroneous; that the decree of distribution was founded on insufficient notice; that the executor should be allowed compensation for his services and counsel fees; and that the remainder of the estate should be held by him for distribution to the heirs at law of the decedent as in case of intestacy. Decree was entered accordingly, and defendants, the executor and devisees under the will, prosecute this appeal.

The respondent contends that the will was revoked by the subsequent marriage of the testator, under the terms of Rem. & Bal. Code, § 1323 (P. C. 409 § 35), which reads as follows:

"If, after making any will, the testator shall marry and the wife shall be living at the time of the death of the testator, such will shall be deemed revoked, unless provision shall have been made for her by marriage settlement, or unless she be provided for in the will, or in such way mentioned therein as to show an intention not to make such provision and no other evidence to rebut the presumption of revocation shall be received."

She asserts, (1) that she was not bound by the decree of distribution because it was based upon insufficient notice; (2) that she was not bound by the order probating the will, though her petition was filed more than one year thereafter accorded by the statute for contesting the probate of a will, because her petition did not present such a contest as is contemplated by the statute and that, in any event, there was such fraud in obtaining the order admitting the will to probate (as distinguished from fraud in procuring the making of the will) as to open the order of probate to an attack in equity on seasonable application after the discovery of the fraud. A solution of these questions must be determinative of the case.

I. The respondent's first contention must be sustained. The statute governing the decree of distribution in probate proceedings, Rem. & Bal. Code, § 1589 (P. C. 409 § 595), by reference to the statute governing the sale of real estate by an executor or administrator, provides that the decree shall be made only after notice of hearing has been "personally served on all persons interested in the estate at least ten days before the time appointed for the hearing of the petition, or shall be published at least four successive weeks in such newspaper as the court shall order." Rem. & Bal. Code, §§ 1499, 1500 (P. C. 409 §§ 395, 397). In this case, though, the notice was published four times, the first publication was on May 18, 1911, and the hearing was set for June 12, 1911. Less than four weeks elapsed between these dates. We have held such a notice insufficient to give the court jurisdiction to make an order of distribution. *Ball v. Clothier*, 34 Wash. 299, 75 Pac. 1099; *Teynor v. Heible*, 74 Wash. 222, 133 Pac. 1, 46 L. R. A. (N. S.) 1033.

II. Whether the respondent was bound by the order admitting the will to probate must depend upon the scope and purpose of the statute authorizing the contest of a will. That statute, referring to Rem. & Bal. Code by section numbers, reads as follows:

"§ 1307. If any person interested in any will shall appear within one year after the probate or rejection thereof, and, by petition to the superior court having jurisdiction, contests the validity of said will, or pray to have the will proven which has been rejected, he shall file a petition containing his objections and exceptions to said will, or to the rejection thereof. Issue shall be made up, tried and determined in said court respecting the competency of the deceased to make last will and testament, or respecting the execution by the deceased of such last will and testament under restraint or undue influence or fraudulent representation, or for any other cause affecting the validity of such will." (P. C. 409 § 115).

"§ 1309. If no person shall appear within the time aforesaid, the probate or rejection of such will shall be binding, save to infants, married women, persons absent from the United States, or of unsound mind, a period of one year after their respective disabilities are removed." (P. C. 409 § 119).

At common law, wills of real estate were not probated. The contest as to devised real estate was, therefore, tried by ejectment brought either by the claimant under the will or by the heir at law, according as the one or the other was in possession, while wills of personalty were probated in the ecclesiastical courts. Our statute includes both wills of personalty and wills of realty and limits the time of contest as to both. The section last above quoted must be construed as a statute of limitations, a statute of absolute repose as against the claims of all persons save those laboring under the disabilities mentioned and as to all cases covered by the section first above quoted. The language is too plain to admit of any other construction. It must be conceded, therefore, that equitable relief cannot be granted either in the probate proceedings or in an independent action as against the validity of the will after the lapse of the statutory period for contesting the probate, where the ground is such that it might have been presented by way of contest under the statute. This necessarily follows from what Mr. Pomeroy characterizes as "the one remarkable exception" to the other-

wise universal rule that "the jurisdiction of equity exists in and may be extended over *every* case of fraud." 2 Pomeroy, Equity Jurisprudence (3d ed.), § 912. That exception the same eminent author states as follows:

"The marked exception to the jurisdiction referred to in the foregoing paragraph is that of cancelling wills obtained by means of fraud. In a few very early decisions, the court of chancery seems to have asserted such a jurisdiction. For more than a century, however, and through a long series of cases, the judges have either refused to exercise the jurisdiction, or denied its existence; and it has finally been settled by the tribunal of last resort, that, under their general jurisdiction, courts of equity have no power to entertain suits for the purpose of setting aside or cancelling a will on the ground that it was procured by fraud. The same rule has been generally adopted in the United States. Under the common system, the validity of wills of real estate could only be tested in an action at law; that of wills of personal estate was established by the decree of the ecclesiastical court in the proceedings for probate. Under the statutory system generally prevailing in this country, both wills of real estate and wills of personal estate are admitted to probate; in some of the states the decree of the probate court is conclusive with respect to both kinds; in other states it is conclusive only with respect to those of personal property." Pomeroy, Equity Jurisprudence (3d ed.), § 913.

Under our statute, the decree of probate is made conclusive with respect to wills both of realty and personalty.

A leading case upon this subject is found in *State v. McGlynn*, 20 Cal. 231, 81 Am. Dec. 118, an action to enjoin the executors under a will from selling any part of the estate under order of the probate court, and to enjoin them from in any manner intermeddling with the estate, on the alleged ground that the will under the probate of which they assumed to act was a forgery. The court, after discussing the mode of proving wills in England, said:

"In this condition of the law as to the mode of proving wills in England, a vast number of cases have arisen, in which applications have been made to the Court of Chancery to set

aside wills upon the ground that they were obtained by fraud. These applications have been made upon the maxim that fraud is a peculiar object of chancery jurisdiction, and the detection and defeating of it one of the special objects for which Courts of Chancery were established. But in these cases the relief sought has been uniformly denied, for the reason that the Court of Chancery has no power to determine the validity of a will. However comprehensive the jurisdiction may be to set aside other fraudulent instruments, all control over wills has been disavowed by the Court of Chancery. . . .

"Upon examining the decisions of the Supreme Court of the United States, and of the courts of the several states, it will be found that they have uniformly held that the principles established in England apply and govern the cases arising under the probate laws of this country; and that in the United States, wherever the power to probate a will is given to a Probate or Surrogate's court, the decree of such court is final and conclusive, and not subject, except on an appeal to a higher court, to be questioned in any other court or be set aside or vacated by the Court of Chancery on any ground. . . .

"The argument is strongly urged, that it will give great encouragement to fraudulent practices, and in many cases lead to the despoiling of rightful heirs of their inheritance, if the decision of the Probate Court is not subject to be set aside by the Court of Chancery, on allegations of fraud. This consideration has not escaped the attention of the legislature of this and other states, and laws have been passed to obviate this danger, so far as seemed practicable, without on the other hand exposing persons innocently dealing with estates of deceased persons to be harassed by subsequently discovered frauds. Hence, a period is provided in some states, and probably in all, in which, after judgment is pronounced, parties interested may have the decree opened, and the question of the validity of the will re-examined. This time varies in different states . . . In this state, where there is no distinction between wills of real and personal estates, the time is but one year . . .

"These provisions of our statute are but the embodiment of the principles of law which have been settled by the decisions of the courts in England and the United States as be-

ing the most expedient and just, having regard to the rights of persons claiming the estate of a deceased owner, and the requirements of society that the title of property should, as soon as practicable, be made certain and withdrawn from the arena of litigation. A special tribunal is therefore established to decide upon the validity of wills, and the decision of that tribunal is made final and conclusive; giving, however, a right of review by the Supreme Court, and a further right of a new action or proceeding in the same tribunal within one year after the decision of the first proceeding, and securing the rights of persons under disabilities."

The court concluded:

"At the present day, it would not be a greater assumption to deny the general rule that Courts of Chancery may set aside judgments procured by fraud, than to deny the exception to that rule in the case of probate decrees."

The injunction was dissolved for lack of jurisdiction.

The same will was involved in *Case of Broderick's Will,* 88 U. S. 503. That case was a suit in equity, brought by the heirs of Broderick to set aside the probate of his will and have the will declared a forgery. The will was admitted to probate October 8, 1860. The bill alleged that the complainants had no knowledge or information of Broderick's death, nor of the forgery of the will, nor of its presentation for probate, nor of the probate or order of sale, nor of any proceedings until the last day of December, 1866, and that since that time, they had been diligently endeavoring to discover the facts and evidence relating thereto. The bill was dismissed on demurrer raising, *inter alia,* the lack of jurisdiction to question the will by a bill in equity. On appeal, the Supreme Court of the United States said:

"As to the first point, it is undoubtedly the general rule established both in England and this country, that a court of equity will not entertain jurisdiction of a bill to set aside a will or the probate thereof. The case of *Kerrick v. Bransby,* decided by the House of Lords in 1727, is considered as having definitely settled the question. Whatever may have been the original ground of this rule (perhaps something

in the peculiar constitution of the English courts) the most
satisfactory ground for its continued prevalence is, that the
constitution of a succession to a deceased person's estate par-
takes, in some degree, of the nature of a proceeding *in rem*,
in which all persons in the world who have any interest are
deemed parties, and are concluded as upon *res judicata* by
the decision of the court having jurisdiction. The public
interest requires that the estate of deceased persons, being
deprived of a master, and subject to all manner of claims
should at once devolve to a new and competent ownership;
and, consequently, that there should be some convenient
jurisdiction and mode of proceeding by which this devolution
may be effected with least chance of injustice and fraud;
and that the result attained should be firm and perpetual."

These cases apparently arose under a statute conferring
probate powers on a court of limited jurisdiction. Their
reasoning applies even more forcibly here, where probate
matters are administered by a court of general jurisdiction.
*State ex rel. Keasel v. Superior Court*, 76 Wash. 291, 136
Pac. 147.

This court has already held that the probate of a will is
final and conclusive as to all things which might have been
presented at its probate or within the year allowed by the
statute for contesting a will. In *Horton v. Barto*, 57 Wash.
477, 107 Pac. 191, 135 Am. St. 999, one Edward Collins,
a minor, claimed under the will of Anna Collins, deceased.
The will had been probated and the statutory period for
contest had expired. It was claimed that the will was void
because it appeared on its face that the person who sub-
scribed the name of the testator did not also sign as a wit-
ness and state that he signed her name at her request, as
required by Rem. & Bal. Code, § 1321 (P. C. 409 § 31). In
passing upon the question, we said:

"We regard this contention as presenting only a ques-
tion which was before the court upon the probating of the
will, and which might have been again presented to the court
within the year allowed for contesting the will. Rem. & Bal.
Code, § 1307. The probating of a will is a judicial act,

and as such it cannot be avoided or set aside save in the manner provided by law. 1 Woerner, American Law of Administration (2d ed.), § 227; 23 Am. & Eng. Ency. Law (2d ed.) 132; Note in 21 L. R. A. 682 (*Sly v. Hunt*, 159 Mass. 151, 34 N. E. 187, 38 Am. St. 403) ; 1 Ross, Probate Law & Practice, § 192; *State v. McGlynn*, 20 Cal. 233, 81 Am. Dec. 118. And this is true even though the probate be in common form as it is under our law. *London v. Wilmington etc. R. Co.*, 88 N. C. 584; *Petty v. Ducker*, 51 Ark. 281, 11 S. W. 2. Apparently the only difference between the finality of probate in solemn form and probate in common form is as to the time when the probate becomes conclusive. Probate in solemn form becomes conclusive upon rendering the decree to that effect, because it is upon notice to all who are interested. Probate in common form becomes equally conclusive upon the expiration of the time fixed by the statute for contesting the will after its probate, except as to certain persons under disability."

Manifestly, this language is equally applicable to the case here. Whether the will had been revoked by the testator's subsequent marriage was a question necessarily involved in the probate. It was a question, also, which might have been presented to the court within the year allowed by the statute for contesting the will. It may have been decided erroneously, but that is no reason for holding the probate void in the absence of an appeal or contest under the statute. As said by the Supreme Court of the United States in *Case of Broderick's Will*, 88 U. S. at page 517:

"The question recurs, do the facts stated in the present bill lay a sufficient ground for equitable interference with the probate of Broderick's will, or for establishing a trust as against the purchasers of his estate in favor of the complainants? It needs no argument to show, as it is perfectly apparent, that every objection to the will or the probate thereof could have been raised, if it was not raised, in the Probate Court during the proceedings instituted for proving the will, or at any time within a year after probate was granted; and that the relief sought by declaring the purchasers trustees for the benefit of the complainants would have been fully compassed by denying probate of the will.

On the establishment or nonestablishment of the will depended the entire right of the parties; and that was a question entirely and exclusively within the jurisdiction of the Probate Court. In such a case a court of equity will not interfere, for it has no jurisdiction to do so. The Probate Court was fully competent to afford adequate relief."

It will not do to say that the statute accords the right of contest only as to things going to the validity of the will at the time it was executed. The will speaks as of the date of the testator's death, and the probate establishes its status as of that date. Anything going to the validity of the will as of that date is clearly a proper subject to be raised by a contest of the probate. While the statute enumerates as particular grounds for contest certain things going to the validity of the will arising at the time of its execution, namely, testamentary capacity, restraint, undue influence, and fraudulent representations, it adds, "or for any other cause affecting the validity of such will." This clause is certainly broad enough to include any cause affecting the validity of the will at the time of probate, and must be so construed, since the right of contest only arises on the probate, and is accorded by the statute for the very purpose of testing the validity of the instrument as a will. This, of course, is a very different thing from construing the provisions of the will for the purpose of ascertaining its effect as a muniment of title. *Peck v. Peck,* 76 Wash. 548, 137 Pac. 137.

To say that the statute here in question, viewed as a statute of limitations, should not apply because it would work a hardship if the fact that the testator left an estate, or other facts making it desirable to contest the will by showing a subsequent marriage, or a subsequent revocation of the will in any other way, were not discovered until more than one year had elapsed, would be to abrogate the statute, since the same hardship would exist in case the testamentary incapacity, or the undue influence, or the fraudulent representations inducing the will were not discovered until after the lapse of

one year.   Hardships of that character might be inflicted by enforcing any statute of limitations, but that has never been a sufficient reason for refusing to enforce such statute in any case.

While it is true, as asserted by the respondent, that the defective execution of the will complained of in *Horton v. Barto, supra,* was of a character which might be deemed *ejusdem generis* with the things specifically enumerated in the statute, the decision was not placed upon that ground, but on the broader ground that anything going to the validity of the will was precluded, after one year from the probate, from being asserted against the will.   We there said (57 Wash. p. 486):

"It is contended that the concluding words of § 1307, 'or for any other cause affecting the validity of such will,' under the rule of *ejusdem generis,* are limited to causes of contest similar in kind to those specifically enumerated in the section, and do not include such defect as is here relied upon to avoid this will; and it is argued that such cause for avoiding the will is not within the one-year limitation.   We are of the opinion, however, that in view of the language of § 1309, and the fact that we have no provision for the contest of will other than § 1307, the law is that all contests based upon any cause affecting the validity of the will must be commenced within one year after probate, and if not so commenced, the probate becomes a final adjudication as to the validity of the will, binding upon the whole world, save as to the persons under disability mentioned in § 1309.   This will having been duly probated and remaining uncontested for over fifteen years, its validity is now beyond question, save as the right of contest may exist in persons under disability."

See, also, *State ex rel. Wood v. Superior Court,* 76 Wash. 27, 135 Pac. 494.

A distinction is made by some courts that, where the probate court can, if timely invoked, give adequate relief and try out, by way of contest or objection to the probate, every question sought to be raised in equity, then the court of

equity will not entertain jurisdiction for the reason that there is an adequate remedy in the probate court, which, if not invoked within the statutory period, is forever lost; but if, on the other hand, the question cannot be tried or determined in the probate court, as where the claimant under the will also claims by deed from the testator, a court of equity will entertain jurisdiction to set aside the deed, and, having acquired jurisdiction, will also cancel the will. *Sumner v. Staton*, 151 N. C. 198, 65 S. E. 902; *Barnesly v. Powel*, 1 Vesey 284.

In this state, however, as we have seen, the probate court is the superior court, with general jurisdiction, both legal and equitable. Anything going to the validity of the will at the time of probate may be tried out in that court, and in that proceeding, and either legal or equitable relief granted, according to the circumstances. The remedy accorded by our statute providing for the contest of a will is, therefore, full, complete and adequate, if invoked within the time fixed by the statute. The limitation, being absolute except as to certain persons under disability, must, therefore, apply alike to contests upon equitable, as well as upon legal grounds.

The authorities cited by respondent, as it seems to us, fail to reach the point. *In re Barker's Estate*, 5 Wash. 390, 31 Pac. 976, has no application. That case involved the pretermission of a child. But the pretermission of a child does not revoke the will as does a subsequent marriage if the wife survive the testator. Hence, a pretermission is no ground for contest. The statute as to pretermission of children provides that, as to such child, the testator shall be deemed to have died intestate, and provides for contribution by the devisees and legatees under the will to make up the share of such child as an heir. Rem. & Bal. Code, § 1326 (P. C. 409 § 41). The will is not disturbed in other particulars. A comparison of this section with section 1323 above quoted makes the distinction plain. Manifestly, the remedy of a pretermitted child would not be by contest, but simply by motion

that the child's part be set over to it in the course of probate.

In *Greenwood v. Murray,* 26 Minn. 259, 2 N. W. 945, the question was merely one of construction, that is, as to the legal effect of the terms of the will, not as to its validity as a will. A certain devise was held void because it attempted illegally to suspend the power of alienation. Since it was the only devise in the will, it, in effect, but only incidentally, defeated the will. That, however, did not make it a proper subject of contest. An action in contest goes to the validity of the will as a whole and as such, not to the legal effect of its provisions. While the language of the opinion is broad enough to sustain respondent's contention, it does not do so when viewed in context. Moreover, it would seem from the opinion that the probate court had no such general jurisdiction as is possessed by our superior court. But, even in that case, it was held that the decree of distribution according the illegal bequest to the devisee, was final, and the bequest made valid and binding thereby, because the decree was not appealed from.

In *Gaines v. Hennen,* 65 U. S. 553, no question of statutory contest or statute of limitations was involved. In fact, it seems from the opinion that the probate court there involved was a court of very limited powers and had no jurisdiction to entertain the contest. At least, it does not appear that it had such power. We fail to discern wherein the case has any bearing on the question herein involved.

*Fallon v. Chidester,* 46 Iowa 588, 26 Am. Rep. 164, is distinguished in the same way. The statute cited in the opinion, Code of Iowa, 1851, §§ 1297 and 1300, expressly makes the probate of the will by the county court a mere authentication for record, to be used as evidence. It provides that "the transcript of such record, duly authenticated, may be read in evidence in courts of the state without further proof," (1300), and expressly makes the allowance of the will conclusive only as to the "due execution" of the will "unless set aside by an original action or appellate proceedings

in the district court." (1297). The distinction between the statutory jurisdiction and the effect of the probate under that statute and ours is too plain to require comment.

*Evans v. Anderson,* 15 Ohio St. 324, was a case involving a posthumous child. The court held that the statute itself made not only the will, but the probate of the will, subject to be defeated by that contingency, and that the birth of the child after the will was probated revoked the will and defeated the probate as by a condition subsequent.

Counsel also relies strongly upon a foot note to § 913 of vol. 2, Pomeroy's Equity Jurisprudence (3d ed.). That note, after citing many cases which it is said directly or impliedly deny the jurisdiction of a court of equity to avoid the probate of a will, adds:

"While it plainly appears from these cases that there is no jurisdiction to set aside a probate on the ground of fraud in obtaining the will, there would not seem to be any such objection, on principle, to the granting of appropriate relief against the probate itself on account of fraud in the proceedings independently of the will. Such relief would seem to be exactly analogous to that granted against any fraudulent decree or judgment."

But the question here is one of statutory construction. The statute does not, in terms, make any such distinction, and it seems to us that the distinction between fraud in *procuring the probate* of an invalid will, and the probate of a will which had been *procured by fraud,* with knowledge of the proponent of that fraud, is more apparent than real. In both cases, the fraud consists in probating as valid an invalid will. The time when the invalidity attached or has its inception can make no difference, since the will, in any event, speaks as of the date of the death of the testator, and becomes effective only upon probate.

Even granting, however, that the note above quoted marks a material distinction, the question still remains: In this case was seasonable action taken? The respondent admits

that she knew of the testator's death soon after it occurred; that one of the Bartholets sent her a telegram to that effect; that she, soon after, employed an attorney of Northfield, Minnesota, to ascertain whether or not the testator left any estate; that the attorney informed her that he wrote to some banker in Washington, and was informed that Hoscheid had squandered all of his property before his death; that the attorney showed her a letter to that effect from one of the Bartholets, and advised her to take no further action; that she relied on this information, and made no further inquiry until she received a letter from some attorney in Washington in September, 1912.

It is obvious that neither she nor her agent, the attorney, took any steps reasonably calculated to discover whether the testator did, in fact, leave any estate, whether he left a will, or whether his estate was being probated. An application to the clerk of the court, it must be assumed, would have furnished her with the full facts at any time within the year after the probate. There is no evidence that the letter to which she testifies was inspired by any one named as devisee in the will, and, in fact, the charge of fraud is much weakened by the admitted fact that some one of the Bartholets voluntarily, by telegram, advised her of the testator's death less than a year after it occurred. There was no evidence that any one mentioned in the will knew that the respondent had been misinformed, or knew that she was ignorant of the existence of the will. We think that, with knowledge of the death during all of these years, which knowledge was acquired well within the year after the probate, the respondent must be charged with laches in her present effort to assert her claims to the estate. As said on a closely similar state of facts, in *Case of Broderick's Will,* 88 U. S. 503, 518:

"The only excuse attempted to be offered is, that they lived in a secluded region and did not hear of his death, or of the probate proceedings. If this excuse could prevail, it would unsettle all proceedings *in rem.*"

From whatever angle we view this case, we are constrained to hold that both on the law and the facts the appellants must prevail.

The judgment is reversed, and the cause is remanded with direction to dismiss the petition.

CROW, C. J., MAIN, GOSE, and CHADWICK, JJ., concur.