[No. 32532. *En Banc.* February 19, 1954.]

*In the Matter of the Estate of* MATTHEW GHERRA, *Deceased.*
BERTHA GHERRA, *Appellant,* v. ELOISE J. EGAN, *as*
*Executrix et al., Respondents.*[1]

[1]Reported in 267 P. (2d) 91.

*Rex S. Roudebush* and *Henry C. Perkins,* for appellant.

*Gagliardi, Ursich & Gagliardi,* for respondents.

HILL, J.— We here hold that a widow who makes an application for an award in lieu of homestead and exemptions prior to the entry of a decree of distribution in her deceased husband's estate, in accordance with RCW 11.52.010 (Laws of 1951, chapter 264, § 2, p. 828), is entitled to such an award, even though all of the property of her deceased husband's estate was separate property and was disposed of by his will, which will was admitted to probate in that estate more than six months prior to the application for an award in lieu of homestead, if the will was executed prior to his marriage to her and falls within that category of wills which are, by virtue of RCW 11.12.050 [*cf.* Rem. Rev. Stat., § 1399], revoked by a subsequent marriage.

The facts which bring this case before us are:

Matthew Gherra, then a widower, executed his last will and testament December 5, 1945, bequeathing and devising all of his property to his three children. Nearly six years later, October 11, 1951, he married the appellant and they lived together until his death April 8, 1952.

Although the appellant was not mentioned or provided for in the 1945 will and there is no suggestion that provision had been made for her by a marriage settlement, that will was offered and admitted to probate April 23, 1952, *ex parte.* The final report and petition for distribution of the estate in accordance with the terms of the will was filed December 3, 1952.

Thereafter, but before the entry of a decree of distribution, appellant filed a petition asking that certain property of the estate be set aside to her in lieu of homestead and exemptions, as provided by RCW 11.52.010.

The respondents, the three children of Matthew Gherra, one of whom is serving as executrix of his last will and testament, take the position that all of the property in Matthew Gherra's estate was his separate property and was disposed of by his will, and that hence there is no property which could be set aside to the widow in lieu of homestead and exemptions.

Although it apparently is recognized by all parties that Matthew Gherra's marriage to appellant in 1951 is deemed to have revoked the 1945 will, the trial court concluded that, the will having been admitted to probate April 23, 1952, and no contest having been instituted within six months thereafter, the appellant could not challenge the validity of the will. The court thereupon proceeded to enter a decree distributing all of the property of the estate to the devisees and legatees named in the will. From this decree of distribution and from the refusal to set aside property to the widow in lieu of homestead, this appeal is prosecuted.

Except as to the applicability of the provision of RCW 11.24.010 [cf. Rem. Rev. Stat., § 1385] limiting the period for a will contest to six months after admission of the will to probate, there seems to be little question as to the rules of law which govern the situation.

■ It is recognized that a surviving spouse is not entitled to an award in lieu of homestead from the deceased spouse's separate property if that property is otherwise disposed of by will. RCW 11.52.024; Laws of 1951, chapter 264, § 9, p. 832.

■ It is also recognized that the decedent's marriage subsequent to the execution of his will, and his wife's survival of him, revoked that will, there being no showing that provision had been made for her by marriage settlement or that she had been provided for in the will or in such way

mentioned therein as to show an intention not to make such provision. RCW 11.12.050.

It seems to be conceded that, had the widow challenged the validity of the will within six months after its admission to probate, the probate court must have held the will to be revoked by the subsequent marriage, and hence the decedent's property was not "otherwise disposed of by will."

It is likewise recognized that, unless a will contest was necessary, the widow's application for an award in lieu of homestead and exemptions was timely. See *In re Anofian's Estate,* 178 Wash. 316, 34 P. (2d) 883 (1934), and *In re Poli's Estate,* 27 Wn. (2d) 670, 179 P. (2d) 704 (1947).

The crux of the controversy, then, is the applicability of RCW 11.24.010 to the facts as we have outlined them. That section reads as follows:

"If any person interested in any will appears within six months immediately following the probate or rejection thereof, and by petition to the superior court having jurisdiction contests the validity of the will, or appears to have a will proven which has been rejected, he shall file a petition containing his objections and exceptions to the will, or to the rejection thereof. Issue shall be made up, tried, and determined respecting the competency of the deceased to make a last will and testament, or respecting the execution by a deceased of such last will and testament under restraint or undue influence or fraudulent representations, or for any other cause affecting the validity of such will.

"If no person appears within the time aforesaid, the probate or rejection of the will shall be binding and final as to all the world."

The trial court, in determining that this section is applicable in the present case, relied upon *In re Hoscheid's Estate,* 78 Wash. 309, 139 Pac. 61 (1914). There can be no question that our holding in that case supports the conclusion reached by the trial court in the present case. Nicholas Hoscheid, then a widower, made a will May 7, 1889. Thereafter he went to Minneosta and there married Susanna Hoscheid, on July 21, 1891. In 1895 he left her and returned to Washington. He died February 4, 1897. The will was admitted to probate March 26, 1897. By August 7, 1897, the estate had been appraised, real estate at $368.01 and per-

sonal property at $2,369. The executor filed his final account April 12, 1911, and the decree of distribution was entered June 12, 1911. (No explanation is given in the opinion for the delay of more than fourteen years between admission of the will to probate and entry of the decree of distribution.) The widow filed a petition, September 28, 1911, praying for a vacation of the order of distribution and for a decree declaring that the deceased died intestate, and ordering the distribution of the estate accordingly. The trial court granted the relief prayed for; but this court, while holding that the widow was entitled to have the decree of distribution set aside because it had been entered on insufficient notice, reversed the action of the trial court in distributing the estate on the basis of intestacy, because the widow had not contested the validity of the will within one year, as the statute provided. It was further held that her delay of more than fourteen years in contesting the validity of the will constituted laches. In the opinion, the applicable statutes (Rem. & Bal. §§ 1307, 1309) were set out, as follows:

" ' § 1307. If any person interested in any will shall appear within one year after the probate or rejection thereof, and, by petition to the superior court having jurisdiction, contests the validity of said will, or pray to have the will proven which has been rejected, he shall file a petition containing his objections and exceptions to said will, or to the rejection thereof. Issue shall be made up, tried and determined in said court respecting the competency of the deceased to make last will and testament, or respecting the execution by the deceased of such last will and testament under restraint or undue influence or fraudulent representation, or *for any other cause affecting the validity of such will.*' (P. C. 409 § 115).

" ' § 1309. If no person shall appear within the time aforesaid, the probate or rejection of such will shall be binding, save to infants, married women, persons absent from the United States, or of unsound mind, a period of one year after their respective disabilities are removed.' (P. C. 409 § 119)." (Italics ours.)

(These statutes are comparable to RCW 11.24.010; however, it will be noted that the time limitation for the contest of a will has been reduced from one year to six months.)

The court also said:

"It will not do to say that the statute accords the right of contest only as to things going to the validity of the will at the time it was executed. The will speaks as of the date of the testator's death, and the probate establishes its status as of that date. Anything going to the validity of the will as of that date is clearly a proper subject to be raised by a contest of the probate. While the statute enumerates as particular grounds for contest certain things going to the validity of the will arising at the time of its execution, namely, testamentary capacity, restraint, undue influence, and fraudulent representations, it adds, 'or for any other cause affecting the validity of such will.' This clause is certainly broad enough to include any cause affecting the validity of the will at the time of probate, and must be so construed, since the right of contest only arises on the probate, and is accorded by the statute for the very purpose of testing the validity of the instrument as a will."

The court in its opinion dismissed the contention that under the rule of *ejusdem generis* the controlling words of Rem. & Bal. § 1307, "or any other cause affecting the validity of such will," were limited to causes of contest similar in kind to those specifically enumerated in that section, by quoting from *Horton v. Barto,* 57 Wash. 477, 486, 107 Pac. 191, 135 Am. St. 999 (1910), as follows:

" 'It is contended that the concluding words of § 1307, "or for any other cause affecting the validity of such will," under the rule of *ejusdem generis,* are limited to causes of contest similar in kind to those specifically enumerated in the section, and do not include such defect as is here relied upon to avoid this will; and it is argued that such cause for avoiding the will is not within the one-year limitation. We are of the opinion, however, that in view of the language of § 1309, and the fact that we have no provision for the contest of will other than § 1307, the law is that all contests based upon any cause affecting the validity of the will must be commenced within one year after probate, and if not so commenced, the probate becomes a final adjudication as to the validity of the will, binding upon the whole world, save as to the persons under disability mentioned in § 1309. This will having been duly probated and remaining uncontested for over fifteen years, its validity is now beyond question, save as the right of contest may exist in persons under disability.' "

We have quoted at such length from the *Hoscheid* case to show, first, that the trial court in the instant case had an authority directly in point to sustain its position, and, second, that the court there held that the rule of *ejusdem generis* was inapplicable on the basis of the earlier case of *Horton v. Barto, supra.*

The trial court in the instant case, in a very able memorandum decision, gives its reasons for concluding that the *Hoscheid* case was not overruled by the opinion in *In re Elliott's Estate,* 22 Wn. (2d) 334, 156 P. (2d) 427, 157 A. L. R. 1335 (1945). That case, too, requires detailed consideration here.

By will dated January 23, 1936, Nina Elliott left all of her property to Thomas N. Elliott, her second husband. She thereafter (July 10, 1939) executed another will, leaving her estate to two daughters and a minor grandson. She died December 17, 1942, and the will of January 23, 1936, was admitted to probate December 28, 1942. The later will, that of July 10, 1939, was not offered for probate until August 20, 1943, nearly eight months after the probate of the earlier will. (The statute theretofore construed in the *Hoscheid* case, *supra,* had been amended to reduce the time for contest from one year to six months.) The trial court granted a motion to dismiss the petition to probate the later will on the ground that the petition constituted a contest of the earlier will and that it had not been brought within the six months' period. This court, in an *En Banc* decision, reversed the superior court and held that: (1) The offer of a later will does not constitute a contest of a prior will within the meaning and intent of Rem. Rev. Stat., § 1385 (now RCW 11.24.010); and (2) a court of probate has inherent authority, while an estate is still open, to admit to probate a later will than that theretofore probated. While it was stated that the *Hoscheid* case, *supra,* "did not involve a later will, but simply the effect of marriage upon an existing will," the court said that its opinion now differed from that expressed in *Horton v. Barto, supra,* as to the meaning of the word "validity" in that clause providing for a contest "for

any other cause affecting the validity of such will"; and then pointed out that in deciding the *Hoscheid* case, *supra,* the court had taken its interpretation of "validity" from *Horton v. Barto, supra.* In the *Elliott* case, Judge Steinert, speaking for the court, said:

"Furthermore, it is now our considered opinion that the term 'validity,' as used in that clause in Rem. Rev. Stat., § 1385, reading 'or for any other cause affecting the validity of such will,' has reference only to the genuineness or legal sufficiency of the will under attack, raising the question whether the will is legally sufficient in form, contents, and compliance with the statutory requirements as to execution; it does not relate to the operative effect of the will or the period of its operation. In other words, the former will may, as in this instance, meet all the formal and statutory requirements necessary to make it a valid will when executed, but yet may cease to have any operative effect simply because it has been supplanted by a later will."

And, further speaking of the *Hoscheid* case, he said:

"This court further held, however, that the petitioning widow was nevertheless bound by the order admitting the will to probate, because she had not filed her petition within the year allowed by the statute for contesting a will. The decision was rested largely on the case of *Horton v. Barto, supra.* The reasoning through which the court arrived at its conclusion was that Rem. & Bal. Code, § 1309, now comprised in the second paragraph of Rem. Rev. Stat., § 1385, as quoted above, must be construed as a statute of absolute repose against the claims of all persons save those laboring under the disabilities mentioned therein, and against all cases covered by Rem. Comp. Stat., § 1307, which is now comprised in the first paragraph of Rem. Rev. Stat., § 1385, as previously quoted herein; that anything going to the *validity* of the will at the time of probate is a proper subject to be raised by a contest of probate; that the probate of a will is final and conclusive as to all things which might have been presented at its probate or within the year allowed by the statute for contest; and that the clause 'or for any other cause affecting the validity of such will' is broad enough to include anything affecting the *validity* of the will at the time of its probate.

"Again, it will be noted that the *Hoscheid* case, *supra,* did not involve a later will, but simply the effect of marriage upon an existing will. Aside from that, however, the

opinion in that case interprets the term 'validity,' as used in the clause 'or for any other cause affecting the validity of such will,' in the same manner as did the *Horton* case, *supra.* We have already expressed our present opinion as differing from that view. Under our interpretation of that term, as we have expressed it above, those two cases have no controlling effect upon the question with which we are presently concerned."

■ We can agree that the *Hoscheid* case, *supra,* was not expressly overruled by the *Elliott* case, *supra,* and that the trial court was justified in following it. It seems to us, however, that Judge Steinert's reasoning in the *Elliott* case so undermined the interpretation which we had placed on the statute of limitations relating to will contests in the *Hoscheid* case that we must of necessity abandon the earlier interpretation under direct attack, if we are to adhere to the logic and reasoning of the *Elliott* case. That attack is now made. It may be that the *Hoscheid* case was correctly decided, as the court there held that the widow was also guilty of laches in waiting from 1897 until 1911 to attack the probate of the will. However, we no longer adhere to the interpretation of the clause "or any other cause affecting the validity of such will" approved by the court in *Horton v. Barto, supra,* and in *In re Hoscheid's Estate, supra.*

Following the reasoning of the *Elliott* case, *supra,* and the application of the rule of *ejusdem generis,* in *In re Wiltzius' Estate,* 42 Wn. (2d) 149, 154, 253 P. (2d) 954 (1953), we pointed out the specific issues to which the six months' limitation period (RCW 11.24.010) applies. In the *Wiltzius* case we said:

"It is argued that the void nature of the will presents a question that can be heard and determined in the present will contest proceedings under RCW 11.24.010. We do not agree. . . .

"Reduced to essentials, RCW 11.24.010 permits questions to be raised in probate or will contest proceedings relative to (a) testamentary capacity, (b) undue influence, (c) fraud, or (d) 'for any other cause affecting the validity of the will.' In the case of *In re Elliott's Estate,* 22 Wn. (2d) 334, 357, 156 P. (2d) 427, 157 A. L. R. 1335, this court stated, with regard to (d) *supra:*

" 'Furthermore, it is now our considered opinion that the term "validity," as used in that clause in Rem. Rev. Stat., § 1385, reading "or for any other cause affecting the validity of such will," has reference only to the genuineness or legal sufficiency of the will under attack, raising the question whether the will is legally sufficient in form, contents, and compliance with the statutory requirements as to execution; it does not relate to the operative effect of the will or the period of its operation.' "

We again so interpreted the term "validity" in *In re Peters' Estate*, 43 Wn. (2d) 846, 855, 264 P. (2d) 1109 (1953).

The circumstances that arise subsequent to the execution of a will which revoke or render it inoperative in whole or in part—such as a subsequent will (RCW 11.12-.040 [*cf.* Rem. Rev. Stat., § 1398]; *In re Elliott's Estate supra*); the burning, canceling, tearing, or obliterating of a will by the testator, or in his presence or by his consent or direction (RCW 11.12.040); the subsequent marriage or divorce of the testator (RCW 11.12.050 [*cf.* Rem. Rev. Stat., § 1399]); a surviving pretermitted child or children; or descendants of a pretermitted child (RCW 11.12.090 [*cf.* Rem. Rev. Stat., § 1402]); a lapsed legacy or devise (RCW 11.12.120 [*cf.* Rem. Rev. Stat. (Sup.), § 1404-1]; *In re Donaldson's Estate*, 26 Wn. (2d) 72, 173 P. (2d) 159 (1946)); or an ademption (*In re Donaldson's Estate, supra*)—do not represent challenges to the validity of a will or a will contest that must be brought within the six months' period prescribed by RCW 11.24.010. Such circumstances may be brought to the attention of the probate court and established as facts at any time before the decree of distribution is actually entered. As stated in the *Elliott* case, the statute "does not relate to the operative effect of the will or the period of its operation."

If Matthew Gherra's will was revoked, there was property from which the widow's application to have property set aside in lieu of homestead and exemptions could be granted, and the order approving the final account of the executrix and the entry of the decree of distribution were premature.

Appellant urges, further, that the respondents are estopped to raise the statute of limitations. It appears that, when the widow first pointed out that the will had been revoked, the executrix and her attorney acquiesced in that position and the executrix filed a petition asking that she be appointed administratrix. Two weeks after so petitioning (the six months' period within which the will could be contested having expired in the interim), the executrix changed her position and attorneys (or vice versa) and withdrew her petition for appointment as administratrix, and, relying upon the statute of limitations and the *Hoscheid* case, *supra,* has since maintained that the will cannot now be attacked and that all of Matthew Gherra's property was disposed of by that will, and hence there can be no award in lieu of homestead. This, in football parlance, might be referred to as reversing her field.

The order approving the final report of the executrix and the decree of distribution, together with the order quashing the application of the widow for an award in lieu of homestead and exemptions, must be set aside, and the probate court is directed to hold a hearing upon that application. The further probate proceedings will, of course, be dependent upon whether it is established that the will heretofore admitted to probate had been revoked.

GRADY, C. J., SCHWELLENBACH, HAMLEY, DONWORTH, FINLEY, WEAVER, and OLSON, JJ., concur.

MALLERY, J., dissents.

April 12, 1954. Petition for rehearing denied.