[No. 5491.   Decided April 11, 1905.]

FITZ HERBERT McCULLOUGH et al., Executors of the
Estate of George Lauman, Deceased, Respondents, v.
JESSIE MASSON LAUMAN, Respondent, and
MARY E. LAUMAN et al., Appellants.[1]

WILLS—CONSTRUCTION.   The testator's intention must be gath-
ered from the language of the will, construing all the provisions
together.

WILLS — CONSTITUTION — DEBTS — PROVISIONS FOR PAYMENT—
CLAUSE BEQUEATHING ONE-FOURTH OF REMAINDER—DEBTS FIRST
DEDUCTED.   Where a will first provides for the payment of the
testator's debts, and directs an appraisement of all the property,
and a sale of sufficient to pay "special bequests hereinafter named,
and also my debts and for the portion to be set aside for my
daughter," the debts are a first charge on the estate, to be first
paid, together with special bequests, and expenses of administra-
tion, before ascertaining the "one-fourth of the remainder of my
estate," bequeathed to his daughter "after the foregoing bequests
have been provided for."

SAME—APPRAISEMENT—BEQUEST OF ONE-FOURTH OF ESTATE—
VALUE AT TIME OF DIVISION—CONSTRUCTION OF CLAUSE.   Where a
will first provided that an appraisement should be made of all
the testator's property, and that sufficient be sold to pay the
"special bequests hereinafter named, also my debts, and for the
portion to be set apart" for his daughter, and placed in trust for
the daughter one-fourth of the remainder of the estate "on value
as found by appraisement," the will contemplates an appraisement
of the remainder, different from the original appraisement, and
a division of one-fourth in value at the time of setting it apart
for the daughter.

1Reported in 80 Pac. 441.

SAME—BEQUEST OR DEVISE—CONSTRUCTION—PAYMENT OF NET
INCOME—REFERENCE TO MONEY. Where a will, after making pro-
vision for the payment of the testator's debts and certain special
bequests, provides that "one-fourth of the remainder of my estate
. . . shall be placed in trust" for his daughter, and that "the
net income from the aforesaid amount shall be paid" to her for
life, and in case of her death without issue, "said money shall
again become a part of my general estate," the provision for the
daughter is a bequest and not a devise, although the estate con-
sists mostly of real estate, especially where in disposing of the
residue the "rents and profits" are referred to, which terms are
not used in connection with the daughter's share.

Cross-appeals from a judgment of the superior court
for Spokane county, Kennan, J., entered June 18, 1904,
after a trial on the merits before the court without a jury,
giving construction to a will. Modified.

*David Herman* and *W. J. Thayer,* for appellants, con-
tended, among other things, that the intention of the testa-
tor must be gathered from the whole context. 29 Am. &
Eng. Ency. Law (1st ed.), 336; Schouler, Wills (2d ed.),
§ 466; *Chick v. Ives* (Neb.), 90 N. W. 751; *Hunt v.
Hunt,* 18 Wash. 14, 50 Pac. 578; *Earl v. Grim,* 1 Johns.
Ch. 494; *Cook v. Holmes,* 11 Mass. 528. The expenses of
administration are to be deducted before setting aside the
daughter's share. *Whitson's Ex'rs v. Whitson,* 53 N. Y.
479; *Willcox v. Beecher,* 27 Conn. 134; *Willis v. Watson,*
5 Ill. 64. The remainder is to be ascertained by deducting
the debts and expenses of administration from the ap-
praisement of the property. *Estate of Hinckley,* 58 Cal.
457; *Phelps v. Robbins,* 40 Conn. 250; *Stevens v. Under-
hill* (N. H.), 36 Atl. 370. The bequest of one-fourth "on
value" means after the deduction of debts. *Dickey v.
Dickey,* 94 Fed. 231; *Smith v. Terry,* 43 N. J. Eq. 659,
12 Atl. 204; *Bell v. Raymond,* 20 Conn. 337; *Briggs v.
Hosford,* 22 Pick. 288; *Fisk v. McNeil,* 1 How. (Miss.)

535; *Martin v. Fry,* 17 Serg. & R. (Pa.) 426.   The value
is to be determined by the appraisement at the time of
the testator's death.   *First Unitarian Soc. v. Harrison,* 68
Iowa 425, 27 N. W. 362; *Chick v. Ives, supra.*   As used
in the 7th clause, the remainder must be construed to mean
the residue after bequests and debts are paid.   *Morrison v.
Warren,* 4 Houst. (Del.) 414; *Carter v. Balfur's Adm'r,*
19 Ala. 814; *Decker v. Decker,* 121 Ill. 341, 12 N. E. 750.
The word "bequests" may be understood to include the
debts where the context of the will indicates that intent.
*Stebbins v. Stebbins,* 86 Mich. 474, 49 N. W. 294; *Mar-
shall's Ex'rs v. Hadley,* 50 N. J. Eq. 547, 25 Atl. 325;
*Shumate v. Bailey,* 110 Mo. 411, 20 S. W. 178; *In re Davis*
(R. I.), 35 Atl. 1046; *Mortin v. Perry,* 1 Met. 446; *Du-
Bois v. Ray,* 35 N. Y. 162; *Godwin v. Banks,* 87 Md.
425, 40 Atl. 268.   The meaning of "remainder" in the 7th
clause, if doubtful, must be determined by reference to the
other parts.   Schouler, Wills (2d ed.), § 468; *Peters v.
Carr,* 16 Mo. 54; *Kelly v. Stinson,* 8 Blackf. (Ind.) 387;
*Shreiner's Appeal,* 53 Pa. St. 106; *Parsons v. Winslow,* 6
Mass. 169, 4 Am. Dec. 107; *Stebbins v. Stebbins, supra*
The interpretation should give effect to the main and lead-
ing purpose.   *Marshall's Ex'rs v. Hadley, supra; Jones v.
Doe,* 2 Ill. 276; *Rose v. McHose's Ex'rs,* 26 Mo. 590; *Mc-
Murtrie v. McMurtrie,* 15 N. J. L. 276.   The term "re-
mainder" is presumed to have been used in the same sense
in the 7th and 8th clauses.   *Stewart v. Stewart,* 61 N. J.
Eq. 25, 47 Atl. 633; *Tucker v. Ball,* 1 Barb. 94; *Stumpen-
housen's Estate,* 108 Iowa 555, 79 N. W. 376; *Kirkpat-
rick v. Kirkpatrick,* 197 Ill. 144, 64 N. E. 267.

*Danson & Huneke,* for respondent Jessie Masson Lau-
man.   The order or arrangement of the clause for payment
of debts has no significance.   *Currier v. Currier,* 70 N. H.

145, 47 Atl. 94. The direction that debts are to be paid does not make them a charge upon bequests. *White v. Kauffman,* 66 Md. 89, 5 Atl. 865; *Balls v. Dampman,* 69 Md. 390, 16 Atl. 16; *In re Rochester,* 110 N. Y. 159, 17 N. E. 740; *Harmon v. Smith,* 38 Fed. 482; *Gates v. Shugrue* 35 Minn. 392, 29 N. W. 57; *Clift v. Moses,* 116 N. Y. 144, 22 N. E. 393. The clause that the daughter's portion may revert to the estate shows that it is not a part of the remainder, but is in a class with obligations that are a first lien. *Adderman v. Rice,* 19 R. I. 30, 31 Atl. 429. The clause makes provision for this bequest after the payment of other bequests; the intent was not to deduct the debts. *France's Estate,* 75 Pa. St. 220; *Clark v. Mosely,* 1 Rich. Eq. (S. C.) 396, 44 Am. Dec. 229; *In re Rochester, supra; Wolford's Petition,* 23 R. I. 455, 50 Atl. 837; *Lawrence v. Barber,* 116 Wis. 294, 93 N. W. 30; *Bardwell v. Bardwell,* 10 Pick. 18; *Stevens v. Burgess,* 61 Me. 89. There are no repugnancies in the will. *Holmes v. Walter,* 118 Wis. 409, 95 N. W. 380; *Moran's Will,* 118 Wis. 177, 96 N. W. 367. The court should have granted a further appraisement. *Platt v. Platt,* 42 Conn. 330; *Webb. v. Keller,* 39 La. Ann. 55, 1 South. 423; *Phelan v. Smith.* 100 Cal. 158, 34 Pac. 667.

Root, J.—One George Lauman died, leaving a will, which was duly admitted to probate by the superior court in Spokane county. The portions of said will material upon the questions involved in this appeal were substantially as follows: "1st. I wish all my just debts to be paid. 2nd. [Directs place of burial.] 3rd. I desire an appraisement made of all my property I may leave real, personal and mixed, and a sufficient amount sold to pay the special bequests hereinafter named, and also my debts and for the portion to be set apart for my daughter Jessie Mas-

son Lauman. 4th. [Wills $5,000 to each of two nephews.] 5th. [Wills $7,000 to his sisters, and the children of a deceased sister.] 6th. [Directs one thousand dollars to be placed at interest, and the proceeds to be used in beautifying and keeping in order cemetery lots.] 7th. After the foregoing bequests have been provided for, I desire that one ¼ of the remainder of my estate on value as found by appraisement shall be placed in trust . . . for the benefit of my daughter Jessie Masson Lauman . . . 8th. The remainder of my estate shall also be held in trust by same Trust Co., aforesaid and the net rents and proceeds shall be paid at least annually to my sisters share and share alike, . . . [naming them and the children of a deceased sister]."

The executors of the will, being in doubt as to the construction to be placed upon some of its terms, requested the advice and protection of the court as to the manner of giving effect to its provisions. They submitted to the court the following four interrogatories:

"(1) Is the bequest, referred to in the 3rd clause of said will by said testator, as 'the portion to be set apart for my daughter, Jessie Masson Lauman,' concerning which he speaks more particularly in the 7th clause of said will, a legacy, differing from the other legacies given by said will, only, in that the specific amount thereof is not mentioned, but is to be determined by the appraisement directed to be made by said clause 3, or is it a devise of one-fourth part of the residuary estate, coupled with a direction for its segregation from the rest of said residuary estate, its conversion into money, and investment upon the trusts mentioned in said 7th clause.

"(2) If it is to be considered as a legacy, does the provision for the appraisement of the testator's estate, directed to be made by the 3d clause of said will, refer only to the appraisement, required by the laws of this state, to be made of the estates of all deceased persons, and if so, on

the making of the inventory and appraisement on April 12th, 1902, hereinbefore referred to, was the provision relative to an appraisement in the 3rd clause of said will fully complied with, and are plaintiffs required to compute and ascertain the amount necessary to create the trust fund referred to in the 7th clause of said will upon the basis of said appraisement, without regard to whether the estate has increased or diminished in value, since the date of said appraisement.

"(3) If the testator, in making provision, as aforesaid, for an appraisement, referred to another and different appraisement than that provided by statute to be made of his estate, then by whom, in what manner, and at what time is such appraisement to be made?

"(4) In case the bequest, referred to by the testator as the portion to be set aside for the benefit of his daughter, is adjudged to be a legacy, is it intended that said legacy should equal in amount, one-fourth of the gross value of said estate on appraisement, either already made or here-after to be made, as it may be by this honorable court determined, or equal in amount to one-fourth part of the net value of said estate, according to such appraisement, after deducting all debts, other legacies, and costs of administration, or whether debts and other legacies only are to be deducted from such appraised value, or finally, the other legacies only, in computing the amount of the aforesaid legacy."

A hearing was had before the superior court upon these matters, and thereupon findings of fact and conclusions of law were made and entered. The court found, among other things, that the estate had been appraised, in the manner in which estates are ordinarily appraised under the provisions of our probate statutes, at the sum of $200,691.61; that the debts of said testator, including taxes which were a lien upon the estate at the time of his death, amounted to $72,803.84; that certain unimproved lands of the estate had been sold, and the sum of $12,490 realized from said sales, and the debts of said estate re-

duced to $55,000; that the real estate unsold had increased in value since the original appraisement, and was, at the time of the hearing herein, of the value of $250,000 subject to encumbrances in the amount of $55,000. The conclusions of the trial court were as follows:

"(1) That the intention of the testator, in directing an appraisement of the whole of his estate, was that the same should be made as soon as possible after his decease, so that his executors would be able to then form an intelligent estimate of the amount of real estate they would have to sell, under the power of sale conferred on them, before they were called on to exercise the same, and also to determine the amount of the sum to be set apart, as directed by the will, for the benefit of the defendant Jessie Masson Lauman.

"(2) That the appraisement, made April 12th, 1902, fully complied with testator's intention, and is the only appraisement required by the will to be made.

"(3) That the sum to be placed in trust, as directed by paragraph 7 of said will, is a legacy, the amount of which is arrived at by deducting $18,000.00, the amount of the legacies termed by the testator special bequests, directed to be paid by paragraphs 4, 5, and 6 of said will, from $200,691.61, the total of the appraised value of the whole estate, leaving $182,691.61, one-fourth of which, or $45,675.40, will be the amount to be placed in trust as directed in said paragraph 7.

"(4) That, in announcing the purpose for which he gives his executors a power of sale, in paragraph 3 of said will, the testator placed no special significance on the order in which those purposes are mentioned.

"(5) That it was the intention of the testator that his debts and expenses of administration should be paid out of the remainder of his estate, after the special bequests and the legacy bequeathed by paragraph 7 were paid."

A decree was made and entered in accordance with these conclusions of law. From this decree, the sisters and children of the deceased sister of testator who are mentioned as

beneficiaries in paragraphs five and eight of the will appeal, as does also testator's daughter, Jessie Masson Lauman, mentioned in paragraphs three and seven of the will.

The sisters maintain that the will should be construed as follows, to wit: (1) That the portion to be set apart to Jessie Masson Lauman is a legacy, and not a devise. (2) That the word "appraisement," in paragraph 7, means the original appraisement of the estate required by law, and that the testator intended that appraisement to be made to determine the amount to be set aside to his daughter, after the payment of the special bequests, expenses of administration, the one thousand dollars for keeping in order the burial place, and payment of the debts of the deceased. (3) That the testator, in paragraph 7, intended no different appraisement than the one mentioned in paragraph 3. (4) That the portion given to Jessie Masson Lauman is one-fourth of the net value of the estate, as found on the original appraisement—that is, from the value of the property, as then appraised, the expenses of administration, the one thousand dollars, the debts of the deceased, and the specific legacies are to be subtracted, and the remainder is the net value of the estate; that one-fourth of this sum is the amount intended for said daughter; that no part of the income of the estate is to be considered in determining the net value of said estate, nor is the said income to be applied in satisfaction of the debts of the deceased for the purpose of ascertaining the part or portion to be set aside to said daughter. The minor children make substantially the same contention as do the testator's sisters.

The daughter, Jessie Masson Lauman, claims that it was the intention of the deceased to, and that he did, devise and bequeath to her the one-fourth of all his property, real and personal, after first deducting from the same the legacies

given and provided for in paragraphs 4 and 5; and that deceased intended that, after said legacies had been paid, she should receive one-fourth of the property then remaining, at its value as appraised at such time, free and clear of all debts and expenses of administration.

The question as to the intention of the testator, with reference to the matters in contention, is therefore presented to this court, and it is incumbent upon us to gather that intention from the language of the will. To do this we must construe all of its provisions together, in the light of the testator's evident general purpose, and of the statutes in force with reference to the administration of wills. After a careful examination, we are unable to agree fully with the conclusions reached by the trial court. In our opinion, it was the intention of the testator that his debts should be a first charge upon his estate. The first provision of his will is for their payment. The next thing to find expression was the purpose to create a fund from which his debts, and the allowances of paragraphs 4, 5, 6, and 7, should be paid. To provide the cash for these payments, he expressly directs (in paragraph 3) that a sufficient amount of his property, real, personal, and mixed, be sold. It is evident to us that he intended his debts to be paid first, the bequests of paragraphs 4, 5, and the provisions of 6 to be next attended to, and the directions of paragraph 7 as to the daughter's share to be then carried out. As the law makes the expenses of administration a charge upon each and every part of the estate, we think it must be held that those expenses were in contemplation by the testator when he made the provision for the payment of all his debts in paragraph 1 of the will—there being no express mention of such expenses, or provision to meet the same, elsewhere in the will.

In arriving at the amount to which the daughter is en-

titled under said paragraph 7, the sum of the indebtedness of the estate, including the expenses of administration, plus the bequests of paragraphs 4 and 5 of the will, plus the one thousand dollars set aside by paragraph 6, should be subtracted from the total value of the property of the estate at the time it is in condition to pay said daughter her allowance, as ascertained by a fair appraisement to be made by and under the direction of the superior court at that time. Our reason for believing that the will contemplates an appraisement different from the original appraisement arises from the actual language employed, viewed in the light of the provisions of the will, taken as a whole, and the manifest general purpose of the testator. In said paragraph 7 he says: "I desire that one $\frac{1}{4}$ of the remainder of my estate on value as found by appraisement shall be placed in trust," etc. He does not say, "as heretofore found" or "by the original appraisement." He does not say, "as found by *the* appraisement," which would have been a most natural expression, had he in mind the ordinary appraisement made in an estate. He does not say, "The appraisement referred to in paragraph 3 hereinbefore." He does not will the one-fourth of his *estate,* "on value as found by appraisement," but it is "the *remainder* of my estate, on value as found by appraisement." In other words, the value of such *remainder* is to be "found by appraisement." It is clear to us that the testator intended the provisions of paragraph 7 to be executed and become effective upon his estate, as that estate should exist after the provisions thereinbefore made had been carried into effect. Following paragraph 7, there is no other devise, bequest, allowance, or provision for the payment of debts or disposition of property, excepting that found in paragraph 8, which begins with the words, "The *remainder* of my estate shall also be held in trust . . . to my sisters," etc. This

shows that, when he wrote paragraph 7, he thought he had provided for all debts, allowances, and special bequests, and that he was then ready to divide the balance of his estate between his relatives.  He gives to the daughter a fourth of this balance, and the remainder to his sisters and children of the deceased sister.

As to whether the one-fourth of the remainder of the estate, given to the daughter by paragraph 7, and referred to in paragraph 3 as the portion to be set apart to said daughter, is a bequest or devise, we are inclined to think that it is the former.  The language of paragraph 3 is far from being clear or explicit, and the opening part of paragraph 3 sheds but little light upon this question; but, further on, in paragraph 7, the testator says: "It is my wish that the net income from the aforesaid *amount* shall be paid to my said daughter during her life and in the event of her death without issue, said *money* shall again become a part of my general estate and be divided as hereinafter provided for my sisters."  The use of the word "amount" would seem to indicate that the testator had in mind the idea of money, rather than other property; and where he says that said *money* "shall again become a part of my general estate," etc., it is evident that he used the word "money" as referring to the "amount" mentioned theretofore in the same sentence.  This word "money" must refer—as a grammatical proposition—to the word "amount," or to the word "income."  It cannot be held to refer to the word "income," because to give it such a construction would be to leave no provision whatever for the disposition of her property in case of her death, excepting the mere "income from the aforesaid amount."  It was, without doubt, the testator's intention that the entire property given by this will to the daughter should, in the event of her death without issue, go to his sisters.  If the

word "money" refers only to "income," then there would
be no provision, in case of the daughter's death, for the
property to go to the sisters, excepting merely the income.
Consequently, it is evident that, when the testator used the
expression, "said money shall again become a part of my
general estate and be divided as hereinafter provided for
my sisters," he used the term "money" as embracing the
entire allowance made to his daughter by this will.

It will be noticed, also, that in paragraph 8, in speaking
of the "remainder" given to his sisters, he speaks of the
"rents and proceeds" to be derived therefrom; but in para-
graph 7, speaking of the portion given his daughter, he
says nothing about "rents and proceeds," but speaks merely
of the "income" from said "amount." This is another in-
dication that he did not have in his mind any thought of the
daughter's portion embracing real estate. We are satis-
fied that it was the testator's purpose to have his daughter's
allowance delivered to her in the form of money. Such
allowance was, therefore, a bequest.

The case is remanded to the honorable superior court
with directions to modify its decree hereinbefore entered
to correspond with this decision. The costs to the parties
upon this appeal shall be allowed by the executors as ex-
penses of administration.

Mount, C. J., Dunbar, Rudkin, and Crow, JJ., con-
cur.

Hadley and Fullerton, JJ., took no part.