[No. 22457. Department One. October 15, 1930.]

FRANCES M. FEENEY, *as Administratrix, Respondent,* v. CARL G. LUFKIN, *Respondent,* WALTER E. LUFKIN, *Appellant.*

FRANCES M. FEENEY *et al., Respondents,* v. CARL G. LUFKIN, *Respondent,* WALTER E. LUFKIN, *Appellant.*[1]

*Berkey & Cowan,* for appellant.

*G. M. Ferris* and *W. R. Sampson,* for respondents.

MITCHELL, C. J.—George H. Lufkin and Louisa O. Lufkin were husband and wife and had five children. They executed separate wills on May 31, 1927, the wills being alike in practically all essential particulars. Each one of them named the other as executrix or executor. Mrs. Lufkin died in 1928, and thereafter Mr. Lufkin executed a codicil to his will, declaring, among other things:

"It is my wish and desire that my will which is the other half of the intervention will made by myself and

[1]Reported in 292 Pac. 257.

wife and which will be found in the safe at my home be carried out as nearly as possible.''

The codicil changed the will by naming Frances M. Feeney and A. W. Johnson as executrix and executor.

Mrs. Lufkin's will was admitted to probate, and, before her estate was closed, Mr. Lufkin, who acted as executor of her will, died, not having remarried. His will with codicil were duly admitted to probate, and Frances M. Feeney and A. W. Johnson were appointed, and are now acting as, executrix and executor thereof.

Each will, in paragraph one, directs the payment of funeral expenses and all other just debts. Paragraph two of her will says, ''I am a married woman, the wife of George H. Lufkin.'' Paragraph two of his will says, ''I am a married man, the husband of Louisa O. Lufkin.'' And paragraph two of each will further says, ''We have five (5) children living, namely, Walter E. Lufkin, Carl G. Lufkin, Stevens W. Lufkin, Frances M. Feeney and Ethel I. Baker.'' Paragraph three of each will is the same, except, of course, she gives a life estate to him, while he gives a life estate to her, and, quoting from her will, is as follows:

''Third: I bequeath and devise to my beloved husband, George H. Lufkin, all of the remainder of my property, both real and personal of which I may die seized, to be held by him during his natural lifetime, he to have full power to sell, mortgage or convey same, and to reinvest the proceeds therefrom, and also to use the income and profit thereof or the proceeds therefrom, and at his death the said property remaining to be equally divided among my five children (above named) to be held by the said children forever; provided, however, there shall be taken from the share of the said Carl G. Lufkin and given to the said Walter E. Lufkin, if alive, the sum of $1,500 if the share of the said Carl G. Lufkin equals that amount; if not, then whatever the amount shall be, and if the said Walter E. Lufkin shall be deceased then the said

$1,500 or whatever the amount shall be, up to the said sum of $1,500 shall be divided equally among the survivors of said children, not including the said Carl G. Lufkin, it being understood that the said Carl G. Lufkin has already received as advancements the sum of $1,500; if any of said children die before I do, the portion of said children shall be divided equally among the survivors of said children and shall not go to my grandchildren. To a child known as Robert Lufkin I make no bequest or devise whatever.''

In paragraph four, each appoints the other as executor or executrix. In paragraph five, each provides that his or her will shall be construed and held to be a non-intervention will. Paragraph six of her will provides:

"I further direct that this will is contingent upon one thing: If my said husband, George H. Lufkin, shall re-marry, then and in that event and immediately upon said re-marriage, my property shall be divided among my children as above set out.''

The sixth paragraph of his will contains a similar provision with reference to her remarrying.

The executors, setting up his will, together with the will of Mrs. Lufkin, and alleging that Walter E. Lufkin was demanding, among other things, $1,500 out of what would otherwise go to Carl G. Lufkin from each of the two estates, petitioned the probate court for a construction of the will of Mr. Lufkin in that particular. Walter E. Lufkin answered, setting up both wills and asking that both be construed so as to give him, among other things, $1,500 out of what would otherwise go to Carl in each estate. Carl G. Lufkin appeared by answer, and, by appropriate allegations, demanded that the wills be so construed as to allow out of his share in the two estates $1,500 only once.

On the trial, the judgment was that Walter E. Lufkin should receive from the shares which would

otherwise go to Carl G. Lufkin under both wills the sum of $1,500 and no more. Walter E. Lufkin has appealed.

Mr. and Mrs. Lufkin, as husband and wife, raised a family of five children and accumulated considerable property. Each made a rather common will, giving the other a life estate in his or her property, conditioned upon the other not remarrying, with the remainder over to the children share and share alike, this latter with the proviso that, out of what would otherwise be the share of Carl, should be taken a specific amount to be given to Walter. Much is said by respondents about the wills being intended to dispose of community property. There is nothing, however, about the wills or the language employed in them to indicate there was any purpose to dispose of any property as community property. There was no compliance with Rem. Comp. Stat., § 6894, providing a manner for husband and wife to jointly enter into an agreement concerning the status or disposition of any or all community property to take effect upon the death of either. Each of these wills is separate and individual, and speaks only of the testator's property, mentioning it as "my property."

Upon the death of Mrs. Lufkin, her property descended, life estate to her husband, remainder over to her children, and, upon his death later on, the title to her property then became vested entirely free in her children, wholly unaffected by any provision in his will. After her death, he redeclared and republished the provisions of his will by executing a codicil to it for that purpose, and thus intended that all charges, bequests, and devises mentioned in his will should be taken care of by only the property passing under his will. He, of course, had no right or power to provide that anything of that kind in his will should be met out of property that theretofore belonged to his wife

and which, under her will, had now become the property of their children. In his will, he speaks of the property covered by the provisions of his will as "my property."

Testimony was introduced over the objections of the appellant tending to show that Mr. and Mrs. Lufkin had advanced approximately $1,500 to Carl, and the argument, as we understand, is that the parents intended that together they should take $1,500 from Carl's share and give it to Walter. But the wills do not say so. Had that been the intention, it would have been easy for each to speak of it as taking from Carl's share an amount equal to one-half of all advancements made by the parents, understood to be $1,500, or, better still, to have said $750 in plain language. To us, the language under consideration in the wills is plain, too much so, indeed, to allow or suggest resort to construction. In effect, the language is that there shall be taken from the share of Carl and given to Walter the sum of $1,500, if Carl's share equals that amount. Each says that in his will. But it is said that the reason given for the amount specified was that advancements had been made by the community to that amount, and that each intended that, if one made Carl pay, the other should not. However, there is nothing in the language used in the will to justify that contention, and certainly, as already stated, the language is plain. The taking of $1,500 from Carl's share, as provided in each will, is in no way contingent on that amount, or any part of it, being taken out of the other's estate. Wills must be in writing and signed by the testator or testatrix. Section 1395, Rem. Comp. Stat. The judgment appealed from in this case rewrites the two wills involved, contrary to the plain provisions of that statute, neither one having signed his will thus rewritten.

Section 1415, Rem. Comp. Stat., says:

"All courts and others concerned in the execution of last wills shall have due regard to the direction of the will, and the true intent and meaning of the testator, in all matters brought before them."

Either with or without such a statute, the courts generally say:

"It is a general rule in the construction of wills that the intention of the testator must govern and that intention must be ascertained from the will itself." *Newport v. Newport,* 5 Wash. 114, 31 Pac. 428; *McCullough v. Lauman,* 38 Wash. 227, 80 Pac. 441; *Olsen v. Hagan,* 102 Wash. 321, 172 Pac. 1173.

When each testator provided in his will that, out of Carl's equal share of the testator's property remaining over from the life estate, $1,500 should be taken and given to Walter, it must be held that the testator intended that specific amount, neither more nor less, because that is precisely what was said in the will; and it is wholly immaterial whether either one or both of the testators advanced $1,500 or any other sum whatever to Carl.

The applicable rule is well stated in 28 R. C. L., Wills, § 243, pp. 269-270, as follows:

"Parol evidence is not admissible to show that the testator meant one thing when he said another, or to show an intention not expressed in the will itself, or to aid in making a will which the testator intended to but did not in fact make. This rule is applied especially where the language of a will is plain and unambiguous. However clearly an intention not expressed in the will may be proved by extrinsic evidence, the rule of law requiring wills to be in writing stands as an insuperable barrier against carrying the intention thus proved into execution."

The language in question in each of these wills is plain and unambiguous, and must be observed and

enforced, giving to Walter $1,500 out of Carl's share in each estate if his share equals that amount, if not that much, then whatever the amount shall be.

Reversed and remanded, with directions to enter judgment for the appellant in accordance with the views herein expressed.

PARKER, TOLMAN, and BEALS, JJ., concur.

MILLARD, J. (concurring)—I am convinced that the advancement to Carl G. Lufkin was $1,500 from the community estate, and not $1,500 from each parent. However, the intention of the testator as ascertained from the will must govern. The language of the will of each testator clearly indicates the testator's intention, which precludes invoking the rules of law which aid in the construction of wills; therefore I concur.