[No. 29151. Department One. February 14, 1944.]

*In the Matter of the Estate of* IDA KANE, *Deceased.*

EDMOND LEWIS MILLER *et al., Respondents and Cross-appellants,* v. FRED V. MILLER, *as Executor, Appellant.*[1]

*George Olson* and *Warren Hardy,* for appellant.

*J. A. Kavaney, Geo. G. Hannan, Irving R. Stratton,* and *Will Derig,* for respondents and cross-appellants.

JEFFERS, J.—This proceeding involves a will contest instituted by four grandchildren of Ida Kane, deceased. Mrs. Kane died in King county, Washington, on September 6, 1942, leaving as her only heirs a son, Fred V. Miller, and four grandchildren, Edmond Lewis Miller, of lawful age, Robert Gordon Miller, Howard Russell Miller, and Eva Joan Miller, minors, the children of E. Clarence Miller,

[1]Reported in 145 P. (2d) 893.

deceased. Fred and Clarence Miller were sons of Ida Kane by a prior marriage.

The action was brought by Edmond Miller and Eva May Miller, mother and guardian *ad litem* of Robert, Howard, and Eva Joan Miller, minors, for the purpose of contesting a certain instrument executed by Ida Kane on September 20, 1941, purporting to be her last will and testament. This will was filed in the office of the clerk of King county on September 17, 1942, and provides:

"First. Having in mind my grandchildren, Eddie Miller, Robert Miller, Russell Miller and Joan Miller, I give, devise and bequeath all of my property to my son, Fred V. Miller, and I appoint as executor and trustee of my estate, said Fred V. Miller, or such person or corporation as he shall select to be executor and trustee.

"Second. I direct that my executor and trustee serve without bond, and have full power to sell and dispose of my property, and that my estate be probated without the intervention or supervision of any court, as provided by the laws of this state relative to nonintervention wills.

"IN WITNESS WHEREOF, I have hereunto set my hand and seal this 20th day of September, 1941.

"(Signed) IDA KANE (x) her mark."

The subscribing witnesses to this will are Alfred H. Lundin, who prepared it, and Dr. D. Henry McChesney, who attended Mrs. Kane during her last illness.

On September 17, 1942, Fred V. Miller presented the above will for probate, and thereafter, on September 25, 1942, an order was made and entered admitting the will to probate and appointing Fred V. Miller as executor thereof. Mr. Miller qualified as such executor, and thereafter filed an inventory showing the estate to consist of lot 6, block 44, Pontius second supplemental addition to the city of Seattle, appraised, with improvements, at $28,000; furniture, fixtures, etc., in the apartment house located on such property, appraised at $900; cash on hand, $137; making a total appraised value of the estate, $29,037.

We feel it necessary to make a somewhat extended statement of the facts in this case, in order that a better under-

standing may be had of the contentions of the parties, notwithstanding the conclusions we have reached.

The petition to contest was based upon two specific grounds; namely, mental incapacity of Ida Kane, and undue influence on the part of Fred Miller.

It appears from the testimony that the real estate above mentioned, upon which is located the Elmondo apartments, had at various times since its acquisition by Mrs. Kane been carried on the records in the name of Fred Miller or Clarence Miller. However, no deed or deeds are in the record showing a conveyance from the mother to either one of her sons. On August 7, 1928, according to the testimony, title to the property stood in the name of the son, Fred V. Miller, who at that time resided in Los Angeles. On the date last mentioned, Fred Miller, at the request of his mother, made, executed, and delivered to his brother Clarence a deed to the property. The witnesses refer to this deed as conveying to Clarence an undivided one-half interest in the property. While the deed was not introduced in evidence, it was read into the record, and, as appears therefrom, it purported to be a warranty deed. We quote from the record:

" 'The grantor, Fred V. Miller, single, Los Angeles, California, for and in consideration of Ten Dollars, and other valuable consideration, to me in hand paid, conveys and warrants to E. Clarence Miller, of Seattle, King County, Washington, the following described real estate, to-wit, Lot 6, block 44, Pontius Second Supplemental Addition to the City of Seattle. Lot 4, block 2, McNaught's Addition to Seattle.' "

Clarence Miller died in April, 1939, and his estate was probated. The record in that probate is not in evidence, but from the testimony it appears that, based upon the record showing the deed from Fred to Clarence, the above property was inventoried in the estate of Clarence Miller. However, Mrs. Miller, Clarence Miller's widow and mother of these contestants, testified that they had never claimed that they were the owners of more than an undivided one-half interest in and to the property.

On October 17, 1939, which was after the death of Clarence Miller, Fred Miller, by quitclaim deed, conveyed this property to his mother, Ida Kane. In the testimony, this last deed is referred to as conveying an undivided one-half interest, but the deed purports to convey all the interest Fred had in the property.

In so far as the record shows, at the time Ida Kane executed this will, on September 20, 1941, there was on record a warranty deed from Fred Miller to Clarence Miller, dated August 7, 1928, and a quitclaim deed from Fred Miller to his mother, dated October 17, 1939. It further appears from the testimony, the record itself not being in evidence, that sometime before the death of Ida Kane, and after she had made the above will, she started an action in the superior court for the purpose of obtaining a judgment adjudicating that the deed from Fred to Clarence Miller, dated August 7, 1928, was in fact a trust deed, and that Clarence held the property in trust for her. This action was pending at the time this contest was started, Fred Miller having been substituted for his mother as party plaintiff.

Apparently since the appointment and qualification of Fred Miller as executor, he has had control of the apartment house and the rents received therefrom.

After the suit last mentioned was started, contestants became alarmed that, if Fred was successful in having the deed to Clarence declared to be a trust deed, he would then contend that under the will he was entitled to all his mother's property, to the exclusion of these contestants. Under this condition of affairs, contestants started this suit. The trial court was informed of the action then pending, in which it was sought to have the deed to Clarence declared to be a trust deed.

There was a great deal of testimony introduced pertaining to Ida Kane's intent in making the will, and what she intended to convey thereby. Alfred Lundin, who drew the will, and who had known Mrs. Kane for some years, was called as a witness by contestants, and testified that in his opinion Ida Kane was mentally competent to make a will

at the time this will was executed; that the will was read to Mrs. Kane before it was signed, and she indicated that it expressed her wishes. The will was prepared by Mr. Lundin after he had talked with Dr. McChesney relative to Mrs. Kane's condition, and, as hereinbefore indicated, Dr. McChesney was present when the will was read to Mrs. Kane and when she signed it.

It is true that, at the time Mr. Lundin prepared the will, he understood, from previous conversations with Mrs. Kane, that it was her intention upon her death to leave one half of all her property to each of her sons, Clarence and Fred, and it being his understanding that, by the deed of August 7, 1928, Fred had conveyed a half-interest in the property to Clarence, Mr. Lundin was convinced that, at the time the will was made, Mrs. Kane held title to only an undivided one-half interest by virtue of the deed of October 17, 1939, from Fred to her. This being the condition of the record as Mr. Lundin understood it, he drew the will believing that thereby Mrs. Kane was bequeathing to Fred the one-half interest still in her name.

Dr. McChesney, called by contestants, also testified that in his opinion Ida Kane, at the time the will was executed, was mentally competent to make a will; that the will was read to her before she signed it, and she indicated that it expressed her desires. Mrs. Kane had had a stroke sometime before the will was executed, but, as stated, Dr. McChesney, who attended her at that time and subsequently, testified she was mentally competent.

* The evidence so conclusively shows that Mrs. Kane was mentally competent to make a will, that no further recitation of the testimony will be made. In our opinion, there is no testimony which tends to show that Mrs. Kane was unduly influenced by Fred Miller to make the will.

At the close of contestants' case, counsel for Fred Miller challenged the sufficiency of the evidence and moved for a nonsuit and dismissal of the action. The trial court denied this motion. At the close of all the testimony, Fred Miller renewed his challenge to the sufficiency of the evi-

dence to support the allegations of the petition to contest. This motion was also denied.

The trial court, as appears from the statement of facts, at the close of all the evidence stated that Ida Kane was mentally competent, and that no testimony had been offered showing undue influence on the part of Fred Miller. However, the court seemed to be of the opinion that in this proceeding it had jurisdiction to determine property rights of the parties under the will, for it signed and filed a decree which provides in part as follows:

"Now, THEREFORE, it is hereby ORDERED, ADJUDGED AND DECREED, That the estate of E. Clarence Miller, deceased, is the owner of and entitled to the possession of an undivided one-half (½) interest in and to the 'Elmondo Apartments,' situated on 'Lot Six (6) Block Forty-four (44) Pontius Second Supplemental Addition to the city of Seattle . . .' together with all fixtures, furnishings, equipment, and the rents and profits thereof.

"It is further ORDERED, ADJUDGED AND DECREED that it was the intention and understanding of the said Ida Kane, deceased, at the time of the execution and publication of her said Last Will and Testament, that the said property was being divided 'share and share alike,' between her two (2) sons, Fred V. Miller and E. Clarence Miller, deceased, represented by his minor heirs, and that she recognized the estate of E. Clarence Miller, deceased, to be the owner of an undivided one-half (½) interest in and to the said 'Elmondo Apartments,' together with all furnishings, equipment, fixtures and tools, used in and about the operation of the same."

The decree further allowed to contestants the sum of twelve hundred dollars, as an attorney's fee and costs. From this decree, Fred Miller has appealed, and contestants have cross-appealed. We shall hereinafter refer to Fred Miller as appellant, and contestants as respondents.

Appellant contends the court erred in not sustaining his motion for nonsuit; in not sustaining his challenge to the sufficiency of the evidence made at the close of the case; in entering judgment decreeing that respondents were the owners of an undivided one-half interest in the

Elmondo apartments, together with all furnishings, etc.; and in awarding an attorney's fee and costs to respondents.

Appellant's contention from the very beginning was that the only questions before the court were whether or not Ida Kane was mentally competent to make this will, and whether or not appellant exercised undue influence over his mother, or fraud, in procuring the will to be made, and appellant states that, when it appeared from the evidence, and especially after the trial court determined, that Mrs. Kane was competent to make a will, and that no undue influence or fraud had been shown by respondents, the trial court had no alternative but to sustain appellant's challenge to the sufficiency of the evidence and dismiss the contest.

Respondents' assignments of error are that the court erred in holding that the testatrix was competent to make a valid will, and in holding that the will could, with interpretation, be made to express the intent of the testatrix.

Respondents, in their brief, argue the questions of mental capacity of Ida Kane to make the will, and undue influence by appellant. Respondents' cross-appeal and their argument in support of same are apparently based upon their fear that the judgment of the trial court will not be sustained, for they state in their brief:

"At the outset, we agree that the court by its findings based upon an interpretation of the evidence, with reference to the intention of the testatrix, *has made the will* to express the intention of, and to reach the result, that was the object of the testatrix, and with that interpretation we are entirely satisfied, but, in view of the previous holdings of the court, and the pendency of the appeal of the appellant, and the possibility of the court adhering to *its* former declaration of the principle that parol evidence is not admissible to show the intent of the testator, *Feeney v. Lufkin,* 159 Wash. 82, 292 Pac. 257, this cross-appeal has been interposed, to bring before the court the question of the competency of the executrix, to comprehend the true meaning of the instrument presented as her will." (Italics ours.)

■ We have carefully examined the testimony and, as hereinbefore stated, we are satisfied respondents wholly failed to show that Ida Kane was mentally incompetent to make the will, and wholly failed to show any undue influence or fraud on the part of appellant. The trial court so found.

The real question, and in our opinion the only question presented in this case, is whether or not, in view of the above stated condition of the testimony and the findings of the trial court, the court had any authority to do other than dismiss the contest. We are of the opinion it did not.

■ This proceeding, as stated by the trial court, is a will contest. Such a proceeding is purely statutory, and the court is and must be governed by the provisions of the statute. The applicable statute is Rem. Rev. Stat., § 1385 [P. C. § 10017], which provides in part:

"Issue shall be made up, tried and determined in said court respecting the competency of the deceased to make a last will and testament, or respecting the execution by a deceased of such last will and testament under restraint or undue influence or fraudulent representations, or for any other cause affecting the *validity* of such will." (Italics ours.)

Rem. Rev. Stat., § 1387 [P. C. § 10019], provides:

"In any such contest proceedings the previous order of the court probating, or refusing to probate, such will shall be *prima facie* evidence of the legality of such will, if probated, or its illegality, if rejected, and the burden of proving the illegality of such will, if probated, or the legality of such will, if rejected by the court, shall rest upon the person contesting such probation or rejection of the will."

No question is here raised as to the execution of the will.

The authorities generally recognize that in a will contest the issue is the validity of the will.

In 68 C. J., p. 926, § 669, we find this statement:

"Generally a contest will lie on the ground of testamentary incapacity, undue influence, fraud, accident, or mistake, revocation of the writing offered as the will, or its partial annulment or destruction, or any matter going

to the execution of the will or which, if established by proof, would *invalidate* the will; but matter which is not ground for contest in the probate court cannot be made so in contest proceedings filed under the statute after probate. So the fact that the testatrix died a few days after making the will is no ground for setting it aside; nor is breach of a contract to leave property to plaintiff at death ground for contest of a will leaving it to another." (Italics ours.)

In § 670 of the same volume it is stated:

"In the absence of statute conferring a wider jurisdiction on courts of probate, the only question properly involved in the contest of a will is whether the instrument produced is the will of the testator; and the functions of the court are exhausted when that question is decided."

Under the above citation, reference is made to the case of *Montrose v. Byrne,* 24 Wash. 288, 64 Pac. 534. While the question before the court in the cited case was raised at the time the will was offered for probate, we are of the opinion that what was said by the court therein is equally applicable to a contest proceeding. We quote from the cited case:

"The court found the competency of the deceased to execute the will; that it was without undue influence, and was duly published and declared as such will. Upon exceptions made by appellant to the findings of fact, we have examined the testimony carefully, and are not disposed to disturb the conclusions of the superior court. . . . The only question for consideration in the proceeding to have the will established in probate is as to its *validity.* The questions which have been discussed by counsel for appellant relative to its construction and the vesting of the real and personal property mentioned in the will are not cognizable in this proceeding, and will not be further considered." (Italics ours.)

It is equally evident that under § 1385, *supra,* the only issue involved in a will contest is the validity of the will.

In Page on Wills (Lifetime ed.), vol. 2, p. 206, § 640, under the general heading "Power to determine property rights at probate or contest," we find the following state-

ment: "In the absence of statute the court cannot determine conflicting claims as to property."

Bancroft's Probate Practice, vol. 1, p. 325, § 179, states:

"Construction of a will, it may be said generally, is not properly a matter to be raised by contest. In the absence of statute making it void, the fact that the will omits mention of children or grandchildren of the testator is no ground for contest. The will is none the less entitled to probate because, by reason of the omission, it may be inoperative as to a certain portion of the estate."

See *In re Barker's Estate,* 5 Wash. 390, 31 Pac. 976.

While in the case of *In re McKachney's Estate,* 143 Wash. 28, 254 Pac. 455, the trial court sustained a challenge to the sufficiency of contestant's evidence to make out a case in favor of contestant, so that we did not have the exact situation which is presented in the instant case, we did, in the cited case, it seems to us, recognize the principle upon which our conclusions herein are based. In the cited case we stated: "If the contestant would prevail, it, of course, must prove both or one of those allegations." The allegations in the petition to contest, in the cited case, were mental incapacity of the testator and undue influence of the beneficiary named in the will.

We also call attention to the case of *In re Zelinsky's Estate,* 130 Wash. 165, 227 Pac. 507, which was a will contest based upon the sole ground of undue influence. At the close of contestant's case, the court, being of the opinion the evidence was insufficient to prove any of the allegations of the petition, entered a judgment of dismissal. Contestant appealed. While the will contested is not set forth in the opinion, we assume from what is said therein that the will did not divide the property of the testator equally between contestant and his sister, in accordance with an agreement which it was claimed the testator had theretofore made with the contestant. During the trial, the court had sustained objections to certain offered testimony of the contestant relative to the actual considera-

tion given for a deed which he had executed in favor of the testator. In regard thereto, we stated:

"Assuming that, in a proper case, one may show the true consideration of a deed notwithstanding its recitals, and that one written instrument is made in consideration of another, by parol testimony, still we find no error. *The issue here is undue influence only,* and if the deceased violated his contract in the disposition of his property he will, in the absence of evidence to the contrary, be presumed to have done so of his own free will. So the issue was not, did the testator violate a contract, but was he unduly influenced, and the proffered evidence had no bearing on that subject." (Italics ours.)

We affirmed the lower court's holding that no undue influence had been shown.

The case of *In re Hoscheid's Estate,* 78 Wash. 309, 139 Pac. 61, while not involving a will contest, contains certain statements which we think are applicable herein, in so far as they pertain to the issues that can be determined by the court in a will contest. In the cited case, Judge Ellis, speaking for the court, said:

"The will speaks as of the date of the testator's death, and the probate establishes its status as of that date. Anything going to the *validity* of the will as of that date is clearly a proper subject to be raised by a contest of the probate. While the statute enumerates as particular grounds for contest certain things going to the validity of the will arising at the time of its execution, namely, testamentary capacity, restraint, undue influence, and fraudulent representations, it adds, 'or for any other cause affecting the validity of such will.' This clause is certainly broad enough to include any cause affecting the *validity* of the will at the time of probate, and must be so construed, since the right of contest only arises on the probate, and is accorded by the statute for the very purpose of testing the *validity of the instrument as a will.* This, of course, is a very different thing from construing, the provisions of the will for the purpose of ascertaining its effect as a muniment of title." (Italics ours.)

We have found no case involving a will contest, decided by this court, where the trial court, after concluding the

evidence, did not sustain the allegations of the petition but proceeded nevertheless to enter a judgment which in effect purported to determine what it was the testator's intention to devise by such will.

■ We are clearly of the opinion the trial court was without authority to enter the judgment which it did in this case. We are further of the opinion that the only issues before the court were the mental capacity of the testator to make the will and the undue influence or fraud of appellant, if any, in procuring the will to be made, and, having properly determined under the issues that the proof failed to sustain either of these allegations, there was nothing the court could do but sustain appellant's challenge to the sufficiency of the evidence and dismiss the contest. Under the facts in this case, the court also erred in allowing attorney's fees and costs to contestants.

For the reasons herein assigned, the judgment of the trial court will be and is reversed on the appeal of Fred Miller, with instructions to dismiss the contest, and affirmed on respondents' cross-appeal.

SIMPSON, C. J., BEALS, STEINERT, and GRADY, JJ., concur.