[No. 29484. Department One. March 1, 1945.]

*In the Matter of the Estate of* DELBERT A. PUGH, *Deceased.*

ROVERTA BARTON, *Appellant,* v. ANNA PUGH, *Respondent.*[1]

[1]Reported in 156 P. (2d) 676.

*Fred M. Bond,* for appellant.

*John J. Langenbach,* for respondent.

Steinert, J.—The instant proceeding is an appeal from an order directing sale of certain real and personal property composing the major portion of the estate of Delbert A. Pugh, deceased. Appellant, Roverta Barton, is the daughter

of the decedent by a former marriage, and is his only surviving issue. Respondent, Anna Pugh, is the widow of the deceased, and the stepmother of the appellant.

This is the third time that this estate has presented to us a question for decision on appeal. On the first occasion, we held, on the question there presented, that the real property which is here involved was the separate property of Delbert A. Pugh at the time of his death, and that, since the property had been "otherwise disposed of by will" of the decedent, the widow was not entitled to have it set aside to her as a homestead under the provisions of Rem. Rev. Stat., § 1474 [P. C. § 9894]. *In re Pugh's Estate,* 18 Wn. (2d) 501, 139 P. (2d) 698. On the second appeal, involving a different question, we affirmed an order of the superior court awarding to the widow a family allowance. *In re Pugh's Estate, ante* p. 83, 154 P. (2d) 308.

The principal question presented upon the pending appeal is whether, under the facts as established by the evidence, the superior court had jurisdiction to consider the petition for the sale of the real and personal property here involved and to enter the order for such sale. The answer to that question hinges upon the sufficiency or insufficiency of the notice pursuant to which the petition was heard and the order of sale entered. A second question is whether the court properly ordered that all of the real estate, together with certain personal property, be sold as a unit, rather than in separate parcels. A third question is whether, in any event, the time fixed for the sale was appropriate. The facts relating to these questions are as follows:

On March 4, 1927, Delbert A. Pugh, declaring himself to be a resident of Hammond, Indiana, executed his last will and testament in that city. In his will he made several preliminary bequests and then left the remainder of his estate, in equal shares, to the respondent widow and the appellant daughter. He named as executor of his will a resident of Hammond, Indiana.

The circumstances under which Mr. and Mrs. Pugh came to the state of Washington in about the year 1918 and

the manner in which the real property involved in this proceeding was acquired and in large part improved as a cranberry bog are set forth in the two opinions on the former appeals, respectively, and need not be repeated here. The appellant daughter has at all times pertinent to this case resided in the state of Indiana.

Mr. Pugh died September 27, 1941, and thereafter, on December 26, 1941, his will was admitted to probate in Pacific county, in this state, and respondent was at the same time appointed administratrix with the will annexed. Proceedings in connection with the administration of the estate have been conducted from that time forward to the present. The greater part of these proceedings, however, has been attended with bitter disputes between the respondent and the appellant and, as stated before, these disputes have now thrice culminated in appeals to this court.

Early in the progress of the probate proceedings, Mr. Fred M. Bond of South Bend, Washington, attorney for the appellant, served, and on February 9, 1942, filed a written request on behalf of his client, demanding special notice of any and all steps or proceedings taken in this probate cause, particularly those steps enumerated in Rem. Supp. 1941, § 1434. The written instrument stated that, for the purpose of the notice, appellant's address was South Bend, Pacific county, Washington. Over Mr. Bond's own signature, the instrument further recited that "I have authority to represent her [appellant] in every way, whatsoever."

On March 12, 1942, appellant executed a formal power of attorney in which she appointed Mr. Bond as her attorney in fact, fully to represent her in all matters connected with this estate, to take all steps necessary therein according to his judgment, and to do any and all things whatsoever in representation of her, to the same extent as she herself could act, ratifying and confirming all that he should do in the premises. This instrument was filed March 20, 1942.

It is conceded that Mr. Bond was served with notice of every step taken by the administratrix throughout the course of the probate proceedings, and it is not disputed

that he appeared in court at least fifty times upon various matters connected therewith. On some occasions he appeared generally; at other times he appeared specially.

With relation to the present appeal, our attention is concerned solely with those matters which occurred on and after August 19, 1943. On that day the administratrix filed her final account and petition for distribution. The account showed real estate appraised at $4,496, personal property appraised at $1,104, and proceeds derived from the cranberry bog during the years 1941 and 1942 amounting to $4,912.03; or a sum total of $10,512.03. Claims against the estate, expenditures for operating the cranberry bog, widow's allowance, and expenses of administration amounted, in all, to $5,642.72. The net value of the estate was thus $4,869.31.

The cause was set for hearing to be held on September 4, 1943, on the final account and petition for distribution. Appellant filed her objections to the account and, having made a trip to this state, was present in court, personally and by her attorney, on the day set.

Owing to the fact that the 1943 crop of cranberries had not yet been harvested, the matter was continued to December 2, 1943. In the meantime, respondent filed a supplemental final account showing the proceeds derived from the 1943 harvest and reporting that she then had on hand the sum of $2,395.42, in addition to the real and personal property listed in the former account. For some reason which does not fully appear from the record on this appeal, the hearing on the final account was continued indefinitely, and no decree of distribution has ever been entered. It does appear, however, that from January to April, 1944, appellant and respondent were engaged in litigation in the probate court over the matter of a family allowance to the respondent. That was the matter which this court disposed of in the second appeal above mentioned.

On June 2, 1944, respondent, as administratrix, filed a petition for the sale of all the real property and the greater part of the personal property listed in the estate. The real property comprised ten acres used as a cranberry bog and

three acres, apparently unimproved, adjoining. The ten acres embraced ten separately numbered tracts, but these constituted a single unit for the operation of the cranberry bog. The personal property described in the petition consisted of a Ford coupe, a Ford truck, a spraying outfit, a sprinkling system, pumping engines, an insignificant amount of furniture in a small house located upon the land, and a quantity of berry trays. The petition alleged that the estate could not be equitably divided in kind between the heirs, and that all the personal property except the two motor vehicles should be sold in conjunction with the real estate.

The petition was not served upon the appellant personally or by publication, but it is undisputed that service thereof was timely made, as in all other instances, upon Mr. Bond as her attorney. In response thereto, Mr. Bond, *appearing specially* for the appellant, moved to quash the service of the petition and also filed objections thereto, on the grounds that the service was a nullity and that the court did not have jurisdiction of the subject matter or of the person of the appellant. The motion was denied and the objections were overruled. Preserving her special appearance, appellant then, through her attorney, filed an answer denying the material allegations of the petition and setting up affirmative defenses reiterating her claim that the court was without jurisdiction to proceed. A hearing was held, and on June 13, 1944, the court entered an order reciting that the estate could not be equitably divided between the heirs and should therefore be sold, and appointing three viewers, or commissioners, to examine and report upon the property described in the petition.

The three appointees duly examined the property and submitted their written report, in which they stated that the value of all the real and personal property mentioned in the petition, excluding the Ford coupe, amounted to six thousand dollars; that all of the included personal property was essential to the proper operation of the cranberry bog and should be considered as a part thereof; that it would be impossible fairly to divide the bog for the purpose

of distribution; and that the land and personal property should be sold as a single unit. Upon a later hearing, at which Mr. Bond was present and participated, the appointed viewers gave their testimony substantiating in all respects their written report.

The court on July 1, 1944, entered an order confirming the findings of the viewers and directing sale of the land and personal property as a unit. The present appeal is based upon that order.

The first question to be decided on this appeal is whether the notice, upon which the court heard the petition for sale of the property and entered its order thereon, was sufficient in law. It will be kept in mind that appellant's motion to quash the service of the petition, her objections to the application, and her answer thereto were all presented through an asserted *special appearance*. It will also be remembered that appellant had previously served upon respondent her demand for special notice as provided by Rem. Supp. 1941, § 1434, and had given Mr. Bond her general power of attorney with respect to all matters pertaining to the estate. As indicated above, Mr. Bond had made a general appearance in the proceedings in the early stages of the administration.

In this state, probate courts have been clothed by statute with power, under certain circumstances and upon certain terms, to order sale or mortgage of any part of an estate.

Rem. Rev. Stat., § 1496 [P. C. § 9978], provides that if the court should determine that it is necessary to sell any or all of the real estate for any of the purposes prescribed in the probate code (chapter 156, p. 642, Laws of 1917), then the court may make and cause to be entered an order directing the executor or administrator to sell so much of the real estate as the court may determine necessary for the intended purposes. Rem. Rev. Stat., § 1533 [P. C. § 9795], provides, in part, as follows:

"If it shall appear to the court at or *prior to any final hearing* that the estate cannot be fairly divided, then the *whole or any part of said estate* may be sold or mortgaged

in the manner provided by law for the sale or mortgaging of property by executors or administrators and the proceeds thereof distributed to the persons entitled thereto as provided in the final decree." (Italics ours.)

In this instance, there has as yet been no final hearing or decree.

More specific provision for the sale of real property of an estate is set forth in Rem. Rev. Stat. (Sup.), § 1494 [P. C. § 9976], the first sentence of which reads as follows:

"Whenever it shall appear to the satisfaction of the court *that any portion or all of the real property* should be sold or mortgaged for the purpose of raising money to pay the debts and obligations of the estate, and the expenses of administration, inheritance tax or for the support of the family, *or for such other purposes as the court may deem right and proper,* the court may order the sale or mortgage of such portion of the property as appears to the court *necessary for the purpose aforesaid."* (Italics ours.)

The same section of this latter statute then prescribes what the petition for sale or mortgage of real estate shall contain, and immediately continues with this provision:

"Unless the court shall by order expressly so provide, no notice of the hearing of such petition for sale or mortgage need be given, except as provided in section 1434 hereof [now Rem. Supp. 1941, § 1434]; if, however, the court should order notice of such hearing, it shall determine upon the kind, character and time thereof."

Similar provisions are contained in Rem. Rev. Stat., § 1493 [P. C. § 9975], relating to the sale or mortgage of personal property.

The transcript of record on this appeal does not disclose whether or not the court directed that notice of any particular "kind, character and time thereof" be given with respect to the hearing on the petition for sale. However, the orders made by the court in reference thereto do show that at the several hearings concerning that matter the appellant appeared by her attorney of record. It must therefore be presumed, in the absence of any proof to the contrary, that, if the court directed any particular form of notice, such notice was properly given.

Reverting to that portion of Rem. Rev. Stat. (Sup.), § 1494, last above quoted, we note that no notice of such sale need be given except as provided in Rem. Supp. 1941, § 1434.

The last-mentioned section provides that at any time after the issuance of letters testamentary or of administration upon the estate of any decedent, any person interested in the estate as heir, devisee, legatee, or creditor whose claim has been duly served and filed, or as attorney for such person, may serve upon the executor or administrator, or upon the attorney for such representative, and file with the clerk of the court wherein the administration of such estate is pending, a written request stating that he desires *special notice* of any and all of certain matters, steps, or proceedings in the administration of the estate, as designated in the statute. Among these designated steps or proceedings, the filing of petitions for sale or mortgage of any property is included.

That same section further provides that such requests shall state the post-office address of such heir, devisee, legatee, or creditor, or of his attorney, and that thereafter a brief notice of the filing of such petitions shall be addressed to such heir, devisee, legatee, or creditor, or his attorney, at his stated post-office address at least five days before the hearing on such petition, or served personally upon the same persons not less than five days before the hearing.

As stated before, in the early stages of the administration of this estate, Mr. Bond served and filed a written request for special notice of the proceedings designated in the statute, and it is not disputed herein that respondent's petition for the sale of the property here involved and notice of the hearing thereon were served upon him in compliance with the statutory requirements.

Appellant contends, however, that despite the fact that service was made upon her in the manner above related, that is, by service on Mr. Bond, such service was nevertheless a nullity, for the reason that appellant, who was then in Indiana, was entitled either to have personal service

upon herself or to have service upon her by publication, and that her special appearances, preserved in her motion to quash, her objections to the petition, and her answer thereto did not confer upon the court jurisdiction to proceed with the hearing or to enter the order of sale.

We do not agree with this contention in any of its aspects. In this state, probate matters are administered by the superior court as a court of general jurisdiction, both legal and equitable. *In re Hoscheid's Estate,* 78 Wash. 309, 139 Pac. 61; *In re Nielsen's Estate,* 198 Wash. 124, 87 P. (2d) 298. By virtue of Rem. Rev. Stat., § 1371 [P. C. § 9929], the superior courts in the exercise of their jurisdiction of matters of probate have power to probate wills, appoint administrators and executors, administer and settle all estates, award all necessary processes and writs, cause to come before them all persons whom they may deem it necessary to examine, and do all things proper or incident to the exercise of such jurisdiction. Upon the appointment of an executor or administrator, the probate court obtains jurisdiction of the real and personal estate of the deceased, and the administration of such estate becomes a proceeding *in rem. Furth v. United States Mortgage & Trust Co.,* 13 Wash. 73, 42 Pac. 523.

Among the powers of the probate court is the authority granted by Rem. Rev. Stat., § 1492 [P. C. § 9974], to order the sale of real or personal property. Under the authority of Rem. Rev. Stat. (Sup.), § 1494, the court may order the sale of real property, upon the petition of the executor or administrator, with or without notice of the hearing upon such petition, except such notice as may be required by Rem. Supp. 1941, § 1434; similar authority is granted by Rem. Rev. Stat., § 1493, to order sales of personal property, even without petition therefor, and without notice except such as may be required by Rem. Supp. 1941, § 1434.

The appellant appeared generally in the probate cause, demanded notice of further proceedings, as required by Rem. Supp. 1941, § 1434, and did receive such notice of the hearing on the petition for the sale of the property. Her general appearance through Mr. Bond and her demand

for special notice to be served upon him are further emphasized by her power of attorney authorizing him fully to represent her in all matters pertaining to the estate. She could not, therefore, by merely labeling her later appearance at the hearing on the petition a special appearance, thwart the power of the court to proceed with the hearing and enter an order directing sale of the property.

The second question to be here decided is whether the court acted properly in ordering that all of the property here involved, real and personal, be sold as a unit rather than in separate parcels. Upon the facts as we have heretofore delineated them and under the provisions of the statutes hereinbefore quoted, we are satisfied that the court not only had the power to order sale of the property as a unit, but also acted rightly in making such order. It would have been impossible to divide the land equitably between the heirs, and the only alternative was to sell it as a whole and then distribute the proceeds upon final decree. All of the personal property which was included in the report of the viewers, or commissioners, was essential to the proper operation of the cranberry bog and should be considered therewith as a single unit. As stated by the viewers in that report, "It would be folly to consider it otherwise."

The final contention made by the appellant is that, in any event, the time set for the sale of the property was inappropriate. The court ordered that the sale take place on August 5, 1944. Upon giving notice of appeal, appellant filed a supersedeas bond, and, consequently, the sale was not held on the day fixed. Appellant's position upon this phase of the case is that the property should not be sold at a time of the year when the cranberries have not yet been harvested, although virtually all of the work necessary to the production of a crop has been finished, but should be sold only after the harvest has been completed. Manifestly, appellant has, by superseding the order of sale, accomplished her immediate objective, for the sale was not, and has not yet been, held. That particular question has therefore now become moot, and, if the property is later

to be sold, a time in the future will have to be fixed for such sale.

The order of the trial court directing the sale of the property as a unit was correct and proper and is therefore affirmed.

BEALS, C. J., MILLARD, JEFFERS, and GRADY, JJ., concur.

*Fred M. Bond,* for appellant.

*John J. Langenbach,* for respondent.