[No. 29951. Department One. October 1, 1946.]

*In the Matter of the Estate of* DORA E. DONALDSON, *Deceased.*[1]

*John E. Belcher* and *W. J. Daly,* for appellants.

*F. L. Morgan* and *A. C. Grady,* for respondents.

[1] Reported in 173 P. (2d) 159.

SCHWELLENBACH, J.—On August 30, 1945, the will of Dora E. Donaldson, deceased, was offered for probate. It named Charles F. Streater as executor, and devised and bequeathed certain real and personal property to R. L. (Ransom) Higley and Margaret Higley, his wife, and the residue to Jane T. Streater and Margaret Higley. Jane Streater and Margaret Higley are the daughters of Dora E. Donaldson's deceased husband by a former marriage.

Before the will was admitted, William Entwistle, James Entwistle, Mamie Entwistle Pyncheon, David Entwistle, and Celia Entwistle, brothers and sisters of the deceased Dora E. Donaldson, filed their petition contesting the will. The petition, in the first cause of action, alleged lack of mental capacity to execute a will.

The second cause of action alleged that, in 1942, the United States government acquired the property involved in the proceedings herein, for which it paid Mrs. Donaldson a total of $13,880.60; and that, by the exercise of undue influence, the Higleys obtained the proceeds of the sale from her and converted and applied them to their own use; also, that the execution of the will (June 17, 1930) was obtained through undue influence.

The third cause of action alleged that a certain contract for the future care and support of Mrs. Donaldson, made in conjunction with the will, had been obtained through undue influence; and that there was a failure on the part of the Higleys (the other parties to the contract) to perform the obligations under the agreement; and, also, that the devise to Margaret Higley had lapsed, she having died two years before Mrs. Donaldson.

A citation was issued to the proponents of the will ordering them to show cause why the petition contesting the will should not be granted. The citation recited: "The nature and character of said proceeding and the petition herein is to contest the will of Dora E. Donaldson, deceased, . . ." The answer of the proponents denied the allegations of the petition, and, as an affirmative defense, set forth the history of the transactions, and alleged that the terms of the contract

for Mrs. Donaldson's care and support had been complied with. This was denied by the petitioners.

After a hearing continuing for nine days, in which a large number of witnesses were examined, the trial court admitted the will to probate and entered findings of fact, conclusions of law, and judgment dismissing the petition with prejudice.

The court refused to consider the question of ademption or lapsed legacy, stating that such matters could be determined later. From the judgment dismissing the will contest, the petitioners have appealed.

Five questions are raised on the appeal: (1) undue influence in procuring the execution of the will; (2) failure of proponents of the will to perform the conditions precedent entitling them to take under the will; (3) ademption arising out of the appropriation by the United States and payment to the deceased during her lifetime for the real property sought to be devised; (4) lapse of the devise to one of the devisees who predeceased the testatrix; (5) assessment of costs against contestants.

It will be noted that the question of mental capacity to make the will and contract is not before us.

Dora E. Entwistle was born in 1861. She married James Harris in 1878, and lived with him, without issue, until his death in 1905. She married James Donaldson, a widower, in 1913, and went with him to live at the mouth of the Queets river in Jefferson county, where they operated a fish cannery for a couple of years. In 1915, they moved up the river to the farm known as the James Donaldson, Jr., ranch. After a short time on this property, they moved to the land involved in this action.

At the time of their marriage, James Donaldson had two daughters by his first marriage, Margaret and Jane. Jane lived on the ranch with her parents until her marriage to Charles Streater. In 1913, at the time of her father's second marriage, she was living with her husband at Hoquiam. Margaret married Ransom Higley in 1904, and their home was established at Quinault, which is about twenty-five

miles from the Donaldson ranch. Both Mr. Higley and Mr. Streater worked on the Donaldson place at different times after 1915 up to the time of Mr. Donaldson's death; and, when at their own places, visits were made between the families about as often as the distances and the primitive means of travel available would permit.

Mrs. Donaldson had about five hundred dollars when she married James Donaldson, and this, as well as a great deal of hard work, was expended on the ranch by her by the time James Donaldson died in 1929. His estate was probated, with Charles Streater as administrator. The real estate, which included the land involved in this litigation, was appraised at two thousand dollars and was set over to Mrs. Donaldson in lieu of homestead. The personal property, valued at $2,575, consisting of some cash, cattle, and farm equipment, was distributed equally to the two daughters. The estate was closed in May, 1930. Attorneys C. W. Hodgdon and W. J. Daly probated the estate.

Two weeks after the closing of her husband's estate, Mrs. Donaldson, Margaret Higley, and Jane Streater appeared at the law office of Frank W. Morgan in Hoquiam. Mr. Morgan had never met Mrs. Donaldson before, but had been the attorney for the Higleys for a number of years. At this meeting, there was a discussion lasting an hour and a half concerning the drawing of a will and the making of a contract for Mrs. Donaldson's future care. All three of the women took part in the discussion. They were then asked to return the following day, at which time the papers were prepared. Mr. Morgan read the will and contract to Mrs. Donaldson, and she signed them at that time. The contract was mailed to Mr. Higley and he executed it a few days later. Paragraph four of the will is quoted in full:

"And if the executor shall deem it best for the interests of the estate that any traffic, business, enterprise or use in which he finds any part of the said estate on coming into possession of it shall be continued, he is fully authorized and directed to continue any such traffic, business, enterprise or use, and he is further authorized to use or employ the said estate or the proceeds of it in any other business

which he may regard to be for the best interests of the estate, and that in general he is authorized and directed to manage, control and dispose of said estate as a true owner and manager should do.

"After payment of my just debts and obligations as aforesaid, I give, devise and bequeath my estate as follows:

"I give, devise and bequeath unto my beloved granddaughter, Mary Donaldson, the sum of Five Dollars ($5.00) and no more.

"I have this day entered into an agreement with R. L. [Ransom] Higley and Margaret Higley, his wife, whereby they are to provide for me during my old age and to care for me, and in consideration of their entering upon such care and caring for me in accordance with the terms of the contract which has been entered into, I hereby give, devise and bequeath unto R. L. Higley and Margaret Higley, his wife, all of the personal property, including livestock, farming implements and other goods and household utensils, belonging to me at the time of my death, and also such farm lands referred to in the contract heretofore mentioned as shall have been cleared for and be in cultivation by the said R. L. Higley and his wife at the time of my death.

"All the rest, residue and remainder of my property of every kind, name, nature and description, wherever situated, and consisting principally of the real property remaining of the homestead and timber lands, I hereby give, devise and bequeath unto my beloved daughters, Jane T. Streater and Margaret Higley, share and share alike.

"I expressly declare that the foregoing constitute all of my heirs."

The will was witnessed by Mr. Morgan, his daughter Beth Morgan, and Ruth Swan, his stenographer.

The contract follows:

"This agreement, made and entered into this 17th day of June, 1930, by and between Dora E. Donaldson, widow of James Donaldson, deceased, party of the first part, and R. L. [Ransom] Higley and Margaret Higley, his wife, parties of the second part, witnesseth that:

"Whereas the party of the first part is the owner, by inheritance from James Donaldson, of the following described real property situate in Jefferson County, State of Washington, to-wit: [Here follows a description of the property.]

"the same being the farm and homestead of the first party, and which property she owns, together with certain livestock consisting of 16 head of cows and heifers and 10 spring calves and certain farming implements, tools and farm machinery, and

"Whereas the party of the first part is unable to herself farm said property and care for the livestock and property referred to and desires to enter into an agreement with second parties to go upon the place and to till the same and to care for said livestock and property during such time as the party of the first part shall hereafter live, and the parties of the second part are desirous of entering into such an arrangement for the cultivation and control of said property, now therefore,

"It is agreed: That for and in consideration of the services to be performed by the second parties and in consideration of their going upon said property and making a home thereon for themselves and for first party, and providing for her care, nurture and support during the balance of her life, that the parties of the second part do hereby agree to go upon said lands and to carefully cultivate and improve the same and care for said lands and property, and the livestock and personal property before referred to, as carefully and in as good and workmanlike manner as if said property were their own, and shall also furnish and provide a home for first party and shall provide all of the necessaries of life for the first party so long as she shall hereafter live, and shall care for her in sickness and in health during the balance of her natural life. In consideration for such care and nurture, the party of the first part agrees, and has agreed, that the second parties shall have each year during the continuance of this agreement, three-fourths of all of the increase of the livestock now upon the place, the party of the first part to retain one-fourth thereof, and the parties of the second part to have such income as may be derived from the cultivation of the farm referred to and from such sources of income as they may be able to develop in connection with the use of said farm.

"As a further consideration for the agreement and the services of the second parties, the first party agrees that at her death all of the personal property, livestock and farm implements, and such part of the farm lands as shall be then under cultivation, shall be bequeathed unto the second parties for and as a part of the consideration for their care and services, the remainder of said real estate to be be-

queathed to Margaret Higley and Jane T. Streater, share and share alike, and to that end the first party has this day executed her will and by this contract agrees that such will shall not be modified or changed without the consent of the parties of the second part.

"It is further understood and agreed between the parties hereto, that the taxes hereafter accruing upon said property shall be first paid out of the income from the cattle and livestock, and that the division of one-fourth and three-fourths before referred to shall be after the payment of taxes upon the property.

"Each of the parties hereto agrees that this arrangement shall be carried out in good faith and with patient consideration one for the other and that the family life of the parties shall be carried on with as great consideration one for the other as possible and that they shall be and will be a true family."

The trial court, in its memorandum opinion, stated:

"The Higleys immediately moved on the premises and except for the frequent trips Dora made to visit her brothers and sisters, she lived on the ranch and received her entire support from the ranch. There is abundant evidence that Mrs. Donaldson was treated as a member of the family and that she had her own quarters and garden. It also seems plain that during most of the time she was reasonably content. There is evidence that she had some misgivings 'about something that she had signed' but her brothers and sisters, who admittedly knew of the existence of some sort of an agreement with the Higleys, were content that she should remain with them."

The government acquired the real property in question, by condemnation, in 1942, and two checks, totaling $13,880.60, were paid to Mrs. Donaldson. The testimony is rather meager on this subject, but it appears that the money was then divided in some manner between her and the Higleys and the Streaters. Ransom Higley then leased about fifteen acres of the farm from the government, and the parties continued to live there as before.

In 1940, Mrs. Donaldson had a serious operation, and there was some evidence that the Higleys had written her that there was no money available for an operation. However, an operation was had, and the bills were paid from

Mrs. Donaldson's own funds. She subsequently returned to the farm and lived with the Higleys. In 1944, Margaret Higley died, and her daughter came to live on the ranch and help take care of the home and Mrs. Donaldson.

Mrs. Donaldson became fatally ill in 1945 and passed away at a sanatorium in Seattle. The first month's doctor and hospital expense was paid with her own checks; however, the subsequent bill at the sanatorium was paid by Mr. Higley.

. The parties themselves having instituted this proceeding as a will contest and having submitted to the jurisdiction of the trial court for that purpose, and, after a thorough and complete hearing of the matter lasting for several days (all parties who could possibly have been affected by a ruling on this matter having been before the court), and, after an adverse ruling, the matter having been brought before us as a will contest, we shall consider it as such for the purpose of this review.

■ In order to vitiate a will there must be something more than *mere* influence. There must be *undue* influence at the time of the testamentary act which interfered with the free will of the testator and prevented the exercise of judgment and choice. *Dean v. Jordan,* 194 Wash. 661, 79 P. (2d) 331; *In re Schafer's Estate,* 8 Wn. (2d) 517, 113 P. (2d) 41. In the latter case, we said p. 520:

"In *Dean v. Jordan, supra,* this court, while recognizing the rule that fraud or undue influence must be established by evidence that is clear, cogent, and convincing, stated that, nevertheless, certain facts and circumstances bearing upon the execution of a will may be of such nature and force as to raise a suspicion, varying in its strength, against the validity of the testamentary instrument, the most important of such facts being: (1) That the beneficiary occupied a fiduciary or confidential relation to the testator; (2) that the beneficiary actively participated in the preparation or procurement of the will; and (3) that the beneficiary received an unusually or unnaturally large part of the estate. Added to these may be other considerations, such as the age or condition of health and mental vigor of the testator, the nature or degree of relationship between the testator and

the beneficiary, the opportunity for exerting undue influence, and the naturalness or unnaturalness of the will."

In this case, as is usual in matters of this kind, much of the testimony was given by the proponents and the objectors to the admission of the will to probate. However, a large number of disinterested witnesses testified as to Mrs. Donaldson's mental capacity at the time the will and contract were drawn. It is true that she had never met Mr. Morgan before. But the land in question had belonged to her husband. It was perfectly natural for her to will it to his daughters. By virtue of the contract entered into, she was enabled to live off the fruits of this land until her death, and the value of the land increased from two thousand dollars in 1930 to $13,880.60 in 1942. Mrs. Higley and Mrs. Streater might have influenced her somewhat to make the will, but we find that there was no *undue* influence exerted by them.

It is urged that, because they referred to each other, the will and contract became a part of the same transaction, and that there was a failure of consideration when the Higleys neglected to pay all the hospital and medical bills incurred for Mrs. Donaldson. The trial court found that there was substantial compliance with the terms of the contract; that Mrs. Donaldson had lived happily with the Higleys as a member of the family for fifteen years, during which time she was reasonably content; and that her brothers and sisters, knowing of the contract, were satisfied all that time that she remain with the Higleys. With this finding we are in accord.

As to the question of ademption and the lapsed legacy, which the trial court refused to consider at the hearing, the recent case of *In re Kane's Estate,* 20 Wn. (2d) 76, 145 P. (2d) 893, held that, in cases involving the contest of a will, the only issue before the court is the capacity to make a will. In that connection, we quoted with approval from 68 C. J. 926, § 669, as follows:

" 'Generally a contest will lie on the ground of testamentary incapacity, undue influence, fraud, accident, or mistake, revocation of the writing offered as the will, or its

partial annulment or destruction, or any matter going to the execution of the will or which, if established by proof would *invalidate* the will; but matter which is not ground for contest in the probate court cannot be made so in contest proceedings filed under the statute after probate. So the fact that the testatrix died a few days after making the will is no ground for setting it aside; nor is breach of a contract to leave property to plaintiff at death ground for contest of a will leaving it to another.'

"In § 670 of the same volume it is stated:

" 'In the absence of statute conferring a wider jurisdiction on courts of probate, the only question properly involved in the contest of a will is whether the instrument produced is the will of the testator; and the functions of the court are exhausted when that question is decided.' "

The trial court was correct in refusing to consider the question of ademption and lapsed legacy at the hearing.

We find no abuse of discretion in allowing costs to the proponents of the will.

There being no error occurring at the hearing, the judgment of the trial court dismissing the contest is affirmed.

BEALS, C. J., MILLARD, ROBINSON, and JEFFERS, JJ., concur.

November 18, 1946. Petition for rehearing denied.